No. 14-1923

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

EASTERN ASSOCIATED COAL CORP.,

*Petitioner,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR

and

ARVIS R. TOLER,

*Respondents.*

ON PETITION FOR REVIEW OF A DECISION
AND ORDER OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

## SUPPLEMENTAL APPENDIX

| | | |
|---|---|---|
| Sarah M. Hurley | Evan Barret Smith | Mark E. Solomons |
| U.S. Department of Labor | 317 Main Street | Laura Metcoff Klaus |
| Office of the Solicitor | Whitesburg, KY 41858 | GREENBERG TRAURIG LLP |
| Suite N-2605 FBP | (606) 633-3929 | 2101 L Street, N.W. |
| 200 Constitution Ave., NW | | Washington, D.C. 20037 |
| Washington, D.C. 20210 | | (202) 533-2361 |
| (202) 693-5660 | | |

# TABLE OF CONTENTS

| Item | Record Entry | Page No. |
|---|---|---|
| Transcript of Hearing<br>dated March 17, 2010 | | J.A. 192 |
| Director's Exhibit No. 14:<br>Report of Dr. John Burrell<br>dated April 30, 2008 (excerpt) | | J.A. 240 |
| Director's Exhibit No. 15:<br>X-ray Reading by Dr. Thomas Miller<br>(excerpt) | | J.A. 260 |
| Claimant's Exhibit No. 1:<br>X-ray Reading by Dr. Michael Alexander<br>(excerpt) | | J.A. 262 |

**UNITED STATES DEPARTMENT OF LABOR**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**


| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| ARVIS R. TOLER, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) Case No. 2009-BLA-05255 |
| | ) |
| EASTERN ASSOCIATED COAL | ) |
| CORPORATION, | ) |
| | ) |
| Employer, | ) |
| | ) |
| and | ) |
| | ) |
| DIRECTOR, OFFICE OF WORKERS' | ) |
| COMPENSATION PROGRAMS, | ) |
| | ) |
| Party-In-Interest. | ) |


Wednesday,
March 17, 2010

U.S. DISTRICT COURT
   OF TENNESSEE
800 Market Street
Courtroom 1A
Knoxville, Tennessee


The above-entitled matter came on for hearing,

pursuant to notice, at 3:00 p.m.

BEFORE:   HONORABLE DANIEL F. SOLOMON,
Administrative Law Judge

**BAYLEY REPORTING, INC.**
**(727) 585-0600**

**APPEARANCES:**

On behalf of the Claimant:

Sandy Webber, Lay Representative
COMMUNITY HEALTH OF EAST TENNESSEE
502 West Central Avenue, Suite 1
Lafollette, TN   37852
(423) 563-1009

On behalf of the Employer:

Paul E. Frampton, Esquire
BOWLES RICE McDAVID GRAFF & LOVE, LLP
600 Quarrier Street
P. O. Box 1386
Charleston, WV   25301
(304) 347-1163

On behalf of the Solicitor:

Matt Shepherd, Esquire
Associate Regional Solicitor
U.S. DEPARTMENT OF LABOR
618 Church Street, Suite 230
Nashville, TN   37219
(615) 781-5330 ext. 241

J.A. 193

3

**INDEX**

| WITNESSES | DIRECT | CROSS | RE-DIRECT | RE-CROSS | VOIR DIRE |
|-----------|--------|-------|-----------|----------|-----------|
| ARVIS TOLER | 13 By Ms. Webber | 20 By Mr. Shepherd | | | |

| EXHIBITS | IDENTIFIED | RECEIVED | REJECTED |
|----------|------------|----------|----------|
| DIRECTOR'S EXHIBITS 1 through 31 | 5 | 8 | |
| CLAIMANT'S EXHIBITS 1, 2, 3, 4, 5 6, 7 | 10 11 | 11 11 | |
| EMPLOYER'S EXHIBITS 1, 2, 3, 4 5, 6, 7 8, 9, 10, 11 12, 13 | 25 26 27 28 | 28 28 28 28 | |

J.A. 194

4

1                    **P R O C E E D I N G S**

2                                                            2:34 p.m.

3          JUDGE SOLOMON:  I'm Daniel Solomon.  I am an

4    Administrative Law Judge with the United States Department

5    of Labor.  My address is 800 K Street, Northwest, Fourth

6    Floor, Washington, D.C.  The zip code is 20001-8002.  The

7    telephone number is (202) 693-7500.  My e-mail address is

8    solomon.daniel@dol.gov.

9          This case involves Arvis R. Toler -- are you able

10   to hear what I'm saying, Mr. Toler -- he waves at me, for

11   the record, and the employer is Eastern Associated Coal

12   Company, and the Director, Office of Workers' Compensation

13   Programs.  The Case Number is 2009-BLA-05255.  This is a

14   case brought under the Black Lung Benefits Reform Act, which

15   is actually section 422(a) of the Federal Mine Safety and

16   Health Act of 1977, as amended.  Would the parties please

17   identify themselves for the record?

18         MS. WEBBER:  My name is Sandy Webber.  I'm a lay

19   representative for the claimant.  I work for Community

20   Health of East Tennessee.  My address is 502 West Central

21   Avenue, Lafollette, Tennessee, 37766.  My phone number is

22   (423) 563-1009.  My e-mail address is swebber@chetn.org.

23         MR. FRAMPTON:  Your Honor, for the employer, my

24   name is Paul Frampton.  I'm with the law firm of Bowles,

25   Rice, McDavid, Graff and Love.  I'm at 600 Quarrier Street

J.A. 195

5

1   in Charleston, West Virginia, 25301, and my direct line
2   telephone number is (304) 347-1163.

3          MR. SHEPHERD:  And, Your Honor, for the Director,
4   Matt Shepherd, 618 Church Street, Suite 230, Nashville,
5   Tennessee, 37219, telephone number (615) 781-5330, extension
6   241.

7          JUDGE SOLOMON:  Mr. Shepherd, do you want to move
8   the Director's exhibits into evidence?

9          MR. SHEPHERD:  Your Honor, we would offer the
10  Director's exhibits into evidence.

11          JUDGE SOLOMON:  There are 31 exhibits in the
12  Director's file.

13                        [WHEREUPON, the documents
14                        identified as DIRECTOR'S EXHIBITS 1
15                        through 31 were marked for
16                        identification.]

17          JUDGE SOLOMON:  Ms. Webber, have you had an
18  opportunity to look at the exhibits?

19          MS. WEBBER:  Yes, Your Honor.

20          JUDGE SOLOMON:  Do you have objection to any of
21  the exhibits?

22          MS. WEBBER:  No, Your Honor.

23          JUDGE SOLOMON:  Mr. Frampton, do you have
24  objection to any of the exhibits?

25          MR. FRAMPTON:  I do, Your Honor.  Director's

J.A. 196

6

1   exhibit 13 includes some materials from the previous claim,
2   and that includes an assessment by the West Virginia
3   Occupational Pneumoconiosis Board, which is neither a
4   treating record nor is it a designated piece of evidence by
5   claimant and therefore I think could not be admitted into
6   evidence.

7           Director's exhibit 13 also includes a report by
8   Dr. Rasmussen from 1993, which was the Department of Labor
9   examination from the federal black lung claim in 1993.  And,
10  according to the evidence summary of claimant, it appears
11  that claimant is designating Dr. Rasmussen's report as one
12  of their medical reports.

13          MS. WEBBER:  Yes.  We're not going to put it
14  under, of course, the x-rays and the ABG's and the -- which
15  go under the other category.  We didn't want to put it under
16  the others.

17          MR. FRAMPTON:  All right.  And what claimant's
18  representative has just indicated kind of addresses the
19  question that I had, and that is that 1993 report by Dr.
20  Rasmussen includes pulmonary function testing and arterial
21  blood gas testing, as well as a chest x-ray reading.
22  Claimant's representative has already designated two other
23  test results and therefore could not designate the 1993 one
24  under the regulations.

25          So, of Dr. Rasmussen's report from 1993, although

BAYLEY REPORTING, INC.
(727) 585-0600

J.A. 197

1  they have designated the report, the chest x-ray reading
2  that is attached to that report and a part of that report,
3  and the pulmonary function testing and the arterial blood
4  gas testing are not being offered by claimant's
5  representative, as I understand, and therefore should not be
6  admitted into the record of the current case.

7          JUDGE SOLOMON:  First of all, we give wide
8  latitude to the admissibility of documents.  And just
9  because they are admitted into evidence doesn't necessarily
10  mean that they will be used for purposes of evaluation.
11  With respect to the West Virginia Pneumoconiosis Board, if
12  there is an award in that case, generally that award would
13  be used for purposes of determining whether there is an
14  offset or there's some kind of a different evaluation.  It
15  really doesn't go to the actual determination.  We do not
16  give *res judicata* effect to a sister agency unless all of
17  the criteria used for making the determination by the sister
18  agency are exactly the same as we now use under this
19  criteria.

20          And, thirdly, what I do is, I put everything in
21  and then at the end I go back and we talk about what
22  evidence we will use to evaluate the case at that point in
23  time.  And, unless there is a good reason for me to use some
24  other evidence, I would stick with whatever the designated
25  evidence is.  So, if it's not designated, I'm not going to

1   use it for purposes of evaluation.  On the other hand, the
2   BRB, which is an appellate level, would have the opportunity
3   to evaluate that evidence, just in case I'm wrong about that
4   evidence.  So it would remain in the record and it would go
5   up.

6           And, of course, we do not know exactly what the
7   law is with respect to this because not all of the issues
8   that were argued initially when the 2001 regulations --
9   which contain the limiting language -- were evaluated, they
10  were not taken all the way to the Supreme Court.

11          So it is possible that all of this would be
12  evaluated at the Supreme Court level.  And, for that reason,
13  any objection is overruled, and so I am going to admit all
14  of the Director's exhibits -- that would be DX-1 through DX-
15  31 -- into evidence.

16                          [WHEREUPON, the documents
17                          previously identified and marked as
18                          DIRECTOR'S EXHIBITS 1 through 31
19                          were received into evidence.]
20          MR. FRAMPTON:  Thank you, Your Honor.
21          JUDGE SOLOMON:  Ms. Webber, you can make an
22  opening.  Do you want to make an opening?
23          MS. WEBBER:  Yes, Your Honor.
24              **OPENING STATEMENT OF CLAIMANT**
25          MS. WEBBER:  Arvis Toler was employed as a coal

9

1  miner in the nation's coal mines from January 1966 until
2  March 1993. He has been given 27 years of coal mine work
3  credit by the Department of Labor. His notice of disability
4  and claim for benefits was timely filed on February 26th,
5  2008.

6           As a result of his coal mine employment, Mr. Toler
7  contracted pneumoconiosis. The disease has caused breathing
8  impairment to such a degree as to render him totally
9  disabled within the meaning of the federal black lung act
10 and regulations. Eastern Associated Coal Corporation has
11 been named the responsible coal mine operator for this
12 claim.

13          During the course and scope of Mr. Toler's
14 employment with Eastern Associated, he worked mainly as an
15 electrician at a coal preparation plant. Testimony given
16 and evidence submitted today will show that Mr. Gulley [sic]
17 meets the criteria as set forth in the federal black lung
18 act and, as a result, should be awarded black lung benefits.

19          JUDGE SOLOMON: Thank you. Do you have any
20 evidence you want to present at this time?

21          MS. WEBBER: Yes, Your Honor.

22          JUDGE SOLOMON: Okay, Ms. Webber, you have given
23 me seven exhibits. Do you want to read into the record what
24 those exhibits are?

25          MS. WEBBER: Yes, Your Honor. CX-1 is the report

10

1  for a chest x-ray dated July 14th, 2008 read by Dr. Michael
2  Alexander on 7/17 of '08.
3                          [WHEREUPON, the document identified
4                          as CLAIMANT'S EXHIBIT 1 was marked
5                          for identification.]
6            MS. WEBBER:  CX-2 is a pulmonary function test
7  conducted on 7/14/2008 by Dr. Ingrid Fernandes.
8                          [WHEREUPON, the document identified
9                          as CLAIMANT'S EXHIBIT 2 was marked
10                         for identification.]
11           MS. WEBBER:  CX-3 is a pulmonary function test
12  conducted on March 16th, 2009 by Dr. Ingrid Fernandes.
13                         [WHEREUPON, the document identified
14                         as CLAIMANT'S EXHIBIT 3 was marked
15                         for identification.]
16           MS. WEBBER:  CX-4 is an arterial blood gas
17  conducted on 7/14 of '08 by Dr. Ingrid Fernandes.
18                         [WHEREUPON, the document identified
19                         as CLAIMANT'S EXHIBIT 4 was marked
20                         for identification.]
21           MS. WEBBER:  CX-5 is an arterial blood gas test
22  conducted on March 16th of 2009 by Dr. Ingrid Fernandes.
23                         [WHEREUPON, the document identified
24                         as CLAIMANT'S EXHIBIT 5 was marked
25                         for identification.]

J.A. 201

11

1          MS. WEBBER:  CX-6 is a letter from Dr. Michael
2    DiMeo of East Tennessee Pulmonary Associates of Oak Ridge,
3    Tennessee dated March 19th, 2009.
4                          [WHEREUPON, the document identified
5                          as CLAIMANT'S EXHIBIT 6 was marked
6                          for identification.]
7          MS. WEBBER:  And CX-7 is a TB skin test read by
8    Dr. Ingrid Fernandes on July 23rd, 2008 as negative.
9                          [WHEREUPON, the document identified
10                         as CLAIMANT'S EXHIBIT 7 was marked
11                         for identification.]
12         JUDGE SOLOMON:  Mr. Frampton, do you have
13   objection to any of those documents?
14         MR. FRAMPTON:  I do not, Your Honor.
15         JUDGE SOLOMON:  Mr. Shepherd?
16         MR. SHEPHERD:  No objection, Your Honor.
17         JUDGE SOLOMON:  Okay, I am going to admit CX-1
18   through CX-7 into evidence, at least for purposes of
19   identification.
20                         [WHEREUPON, the documents
21                         previously identified and marked as
22                         CLAIMANT'S EXHIBITS 1 through 7
23                         were received into evidence.]
24         JUDGE SOLOMON:  Do you want to put Mr. Toler on
25   the stand?

J.A. 202

12

1           MS. WEBBER: Yes, Your Honor.

2           JUDGE SOLOMON: Mr. Toler, you want to come

3   forward?

4           MR. ARVIS TOLER: What?

5           MS. WEBBER: You need to go on the stand, and if

6   you can't hear me let me know, okay?

7           MR. ARVIS TOLER: I've got a problem with my

8   hearing.

9           MS. WEBBER: I'll do the best I can.

10          JUDGE SOLOMON: Come on up and have a seat right

11  in front of the microphone, Mr. Toler. Would you raise your

12  right hand, please?

13  WHEREUPON,

14                          **ARVIS TOLER**

15  was called as a witness herein, and, having been first duly

16  sworn, was examined and testified as follows:

17          JUDGE SOLOMON: State your name.

18          THE WITNESS: Arvis Toler.

19          JUDGE SOLOMON: Where do you live, Mr. Toler?

20          THE WITNESS: I live at 3215 State Road -- no, my

21  mailing address. I get my mail at Post Office Box 348 in

22  Huntsville, Tennessee.

23          JUDGE SOLOMON: What's the zip there?

24          THE WITNESS: 37756.

25          JUDGE SOLOMON: What do you do for a living, Mr.

J.A. 203

13

1  Toler?

2              THE WITNESS:  When I worked, I was a coal miner.

3              JUDGE SOLOMON:  Now, you have a contraption with

4  you that you brought up.  You have tubes sticking out of

5  your nose.  You want to describe what that is?

6              THE WITNESS:  Do what?

7              JUDGE SOLOMON:  The device that you have that you

8  brought up with you to the witness stand, what is that?

9              THE WITNESS:  That's oxygen.

10             JUDGE SOLOMON:  Now, how long have you been taking

11  oxygen?

12             THE WITNESS:  I've been on it off and on for

13  probably 10 years, but the last year and a half I've been on

14  it 24/7.

15             JUDGE SOLOMON:  Who is the doctor that prescribed

16  the oxygen for you?

17             THE WITNESS:  Dr. Michael DiMeo over at East

18  Tennessee Pulmonary.

19             JUDGE SOLOMON:  Ms. Webber is going to ask you

20  some questions, and then Mr. Frampton and maybe Mr. Shepherd

21  will have some questions also.  Go ahead, Ms. Webber.

22                     **DIRECT EXAMINATION OF**

23                         **ARVIS TOLER**

24  BY MS. WEBBER:

25      Q    Mr. Toler, when were you born?  What's your date

                    **BAYLEY REPORTING, INC.**
                        **(727) 585-0600**

J.A. 204

14

1   of birth?

2        A

3        Q    And your Social Security Number?

4        A    ***-**-****.

5             *(REPORTER'S NOTE:  Transcriptionist*

6             *deleted claimant's Social Security*

7             *Number from the official transcript.)*

8   BY MS. WEBBER:

9        Q    How far did you go in school?

10       A    I finished high school, GED.

11       Q    Are you married?

12       A    Yes.

13       Q    What's your wife's name?

14       A    Carla Sue.

15       Q    And how long have you been married?

16       A    Twenty-five year.

17       Q    Do you have any dependents other than your wife

18  that you list on your taxes?

19       A    What?

20       Q    Do you have any dependents?

21       A    No.

22       Q    Did you serve in the military?  Did you serve in

23  the military?

24       A    Yes, I served three years in the Army Reserves and

25  four years in the Marine Corps.

J.A. 205

15

1    Q    And how many years total did you work in the
2    mines?

3        A    Twenty-seven-plus year.

4        Q    And was your work mostly underground or at the
5    surface?

6        A    I had 17 years underground, and the rest of it was
7    on the surface.

8        Q    And what did you do on the surface?  What was your
9    job there?

10       A    I was an electrician on the preparation plant.

11       Q    Do you remember working for Eastern Associated
12   Coal?

13       A    Yes, ma'am, that's who I worked for.

14       Q    And how long did you work for them?

15       A    Twenty-seven-plus years, about every mine I worked
16   there.

17       Q    So that's --

18            JUDGE SOLOMON:  Mr. Frampton, is there going to be
19   an issue regarding the responsible operator?

20            MR. FRAMPTON:  No, sir.

21            MS. WEBBER:  Okay.  We'll skip those, then.

22   BY MR. LYONS:

23       Q    How many days a week did you work?

24       A    Five to six.

25       Q    How many hours?

J.A. 206

16

1      A    Eight.

2      Q    Do you have any special licenses or

3  certifications?  You said you were an electrician.  Were you

4  ever a foreman or anything like that?

5      A    Now, I did when I worked.  You know, I kept them

6  up.  But after I quit work I had no --

7      Q    Okay.

8      A    I had underground electrician mechanic's

9  certificate.

10     Q    Okay.

11     A    And surface certificate.

12     Q    You have breathing problems, is that right?

13     A    What?

14     Q    You have breathing problems?

15     A    Yes, ma'am.

16     Q    Other than your oxygen, do you have to take any

17  other kinds of breathing medication?

18     A    Yes, I have to take Symbicort twice a day and

19  Spiriva once a day.  And Albuterol sulfate in a nebulizer as

20  I needed it during the day.  And I carry a Albuterol sulfate

21  rescue inhaler with me at all times.

22     Q    Who prescribes your medication for you?

23     A    Dr. DiMeo at Oak Ridge

24     Q    Do you ever cough or spit up phlegm?  Do you ever

25  cough or spit up phlegm?

J.A. 207

1    A    Yes, ma'am.

2    Q    Do you have any problems sleeping at night?  You

3  have any problems sleeping at night?

4    A    Sometimes yes and sometimes no.

5    Q    Okay.

6    A    Sometimes I can't so much.

7    Q    Who is your family doctor?

8    A    Dr. Wolfe in Huntsville.

9    Q    Do you travel to Dr. Wolfe's office?

10    A    What?

11    Q    Do you travel to Dr. Wolfe's office for your

12  appointments?

13    A    Well, whenever I have an appointment.  He don't

14  want me to come into his office unless I just have to

15  because of my lungs.

16    Q    What does he do?

17    A    He sends a nurse around to check on me about once

18  a week.

19    Q    How long has he been treating you?

20    A    I been seeing Dr. Wolfe, well, ever since he came

21  to Huntsville.  Six years, I guess, because I been going to

22  him ever -- used to be a different doctor, the reason I

23  started with him.

24    Q    Do you have any other kinds of problems, any

25  medical problems?

1    A    Have what?

2    Q    Do you have any other medical problems?

3    A    No.

4    Q    Don't have any heart conditions?

5    A    Well, I have a angioplasty done, and they fixed

6   that.  I don't have any problem with that, you know.

7    Q    Did they put stents in your heart?

8    A    Yeah.

9    Q    And do you take any kind of medication for your

10  heart?

11   A    No.

12   Q    Do you smoke?

13   A    I used to smoke, but I don't smoke now.

14   Q    When did you quit?

15   A    About 13 years ago.

16   Q    How many cigarettes did you smoke per day?

17   A    I guess about a pack a day.

18   Q    Do you chew tobacco or dip snuff right now?

19   A    I chew tobacco.

20   Q    Age aside, would you be able to go into a mine and

21  work and do the job you did as miner?

22   A    I didn't hear that.

23   Q    Would you be able to go into a mine right now and

24  do the work that you did as a miner?

25   A    I still didn't hear.

1          JUDGE SOLOMON:  Would you be able to do the kind
2   of work you were doing previously?

3          THE WITNESS:  No.

4   BY MR. LYONS:

5      Q    And you are receiving black lung benefits right
6   now, is that right?

7      A    What?

8      Q    You are receiving black lung benefits right now,
9   right?

10     A    Yeah.

11     Q    Do you have anything else you'd like to add to
12  your testimony?

13     A    I'd just like to say that I know that this black
14  lung business is what's wrong with me.

15     Q    Okay.

16     A    And I don't know a whole lot to say.

17     Q    Okay.

18     A    And I know this is an awful disease.  I wouldn't
19  wish this stuff on anybody, because I know that's what it
20  is.  Even my doctor, Dr. DiMeo, he said, he told me that's
21  what it is.

22     Q    Okay.

23     A    He said it has the alveoli in your lungs toughen
24  up and that will give you infections destroys you a little
25  bit more every day.

1      Q    Okay.

2      A    He said you can only do that so many times until

3 you don't have none left. And that's my diagnosis the last

4 time he talked to me why I have a lung infection and

5 everything else.

6           MS. WEBBER:  That's all I have right now, Your

7 Honor.

8           JUDGE SOLOMON:  Mr. Frampton?

9           MR. FRAMPTON:  Your Honor, I don't have any

10 questions.

11          JUDGE SOLOMON:  Mr. Shepherd?

12                    **CROSS EXAMINATION OF**

13                         **ARVIS TOLER**

14 BY MR. SHEPHERD:

15     Q    Mr. Toler, was your last coal mine work here in

16 Tennessee?

17     A    No.  I never did work here, but I know about it.

18     Q    Where did you last work in the coal mines?

19     A    At Eastern Associated Coal Corporation in West

20 Virginia.

21          MR. SHEPHERD:  No further questions, Your Honor.

22          THE WITNESS:  No, I never worked in Tennessee, no.

23          JUDGE SOLOMON:  So, as an electrician, was there

24 lifting and carrying involved in the job, Mr. Toler?

25          THE WITNESS:  What?

21

1           JUDGE SOLOMON:  As an electrician, which is the
2    last job you did, right?

3           THE WITNESS:  Right.

4           JUDGE SOLOMON:  Was there lifting and carrying
5    involved in that job?

6           THE WITNESS:  Lifting, carrying, cleaning up.

7           JUDGE SOLOMON:  How much in weight did you have to
8    lift to do that job?

9           THE WITNESS:  Probably more than -- it wasn't but
10   now and then, 50 to 100 pounds, you know, when I was a-
11   lifting.  But, you know, you have motors on that stuff.  My
12   biggest motor weighed seven tons, so you know where you have
13   to hold it, start it to get it up, and it still had to be
14   done.

15          JUDGE SOLOMON:  Well, you would use a winch --

16          THE WITNESS:  Yeah.

17          JUDGE SOLOMON:  -- or something like that to move
18   that?

19          THE WITNESS:  Yeah.

20          JUDGE SOLOMON:  So how much walking was involved
21   in that job?

22          THE WITNESS:  Up and down them stairs, and at that
23   point it was seven stories high, 14 feet between them and up
24   and down.  Plus I had to take care of all the coal bearings
25   and make sure everything worked good and had a good slope to

22

1  it.

2          JUDGE SOLOMON:  Would you be able to walk the

3  steps that are required at the tipple where you were

4  working?

5          THE WITNESS:  Not now, I couldn't.  That's hard

6  for me to have to do it to start with was that damned

7  walking.  Make deliveries, you know, up and down and that.

8          JUDGE SOLOMON:  I don't have any further

9  questions.  Ms. Webber, do you have any questions based on

10  what I asked?

11          MS. WEBBER:  No, Your Honor.

12          JUDGE SOLOMON:  Mr. Frampton?

13          MR. FRAMPTON:  No, sir.

14          JUDGE SOLOMON:  Mr. Shepherd?

15          MR. SHEPHERD:  No questions, Your Honor.

16          JUDGE SOLOMON:  Thank you very much, Mr. Toler.

17  You can go back and have a seat with Ms. Webber.

18          [WHEREUPON, the witness was excused.]

19          JUDGE SOLOMON:  And, while he's walking back

20  there, is there anything else, Ms. Webber?

21          MS. WEBBER:  No, Your Honor.

22          JUDGE SOLOMON:  Do you rest?

23          MS. WEBBER:  Yes, Your Honor.

24          JUDGE SOLOMON:  Mr. Frampton, do you want to make

25  an opening?

J.A. 213

23

1          MR. FRAMPTON: Your Honor, I'll make a very brief
2  opening. And I usually don't do that, but, since claimant
3  opted to do that, I think I need to have something on the
4  record.

5                   **OPENING STATEMENT OF EMPLOYER**

6          MR. FRAMPTON: As the Court will see when it looks
7  at the evidence here, Mr. Toler obviously had 27 or 28 years
8  of coal mine employment. He also smoked cigarettes at a
9  pack of cigarettes a day for almost 40 years. And he
10  clearly has developed some respiratory impairment. And the
11  question is going to be what caused that respiratory
12  impairment.

13         The physician opinions in here are kind of divided
14  between a doctor that says that he can't tell and just lumps
15  both possible risk factors and said they both contributed,
16  and two physicians who have looked at the specific tests and
17  the x-ray and other data and said that you can tell in an
18  individual case whether or not impairment is caused by coal
19  mine dust exposure or cigarette smoking or both.

20         The evidence here -- for instance, from an x-ray
21  standpoint, even the positive readings show -- or, two of
22  the positive readings show opacities only in the lower
23  zones, and no opacities in the upper zones which is where
24  the coal dust first comes into the lungs and first attacks
25  the lungs.

J.A. 214

1           One of the positive readings actually reported
2  that there were only opacities in the left lung, nothing in
3  the right lung.  And, again, coal dust exposure first
4  attacks the right lung.  And that physician, that one
5  positive reading, said that there were opacities only in the
6  left lung, which is contrary to what you would see with
7  opacities caused by coal mine dust exposure.

8           In addition to that, the pulmonary function tests
9  themselves, the pattern of the impairment, in this case the
10  doctors who were able to assess that, in light of what the
11  medical literature says, have concluded that the impairment
12  of Mr. Toler has not been caused or contributed to or
13  aggravated by his coal mine dust exposure.

14           JUDGE SOLOMON:  Okay, thank you.  Do you have any
15  evidence?

16           MR. FRAMPTON:  I do, Your Honor.  I have 13
17  exhibits to offer.  Can I approach, Your Honor?

18           JUDGE SOLOMON:  Sure.  Do you want to read these
19  into the record, please?

20           MR. FRAMPTON:  Yes, Your Honor, if I could.
21  Employer's exhibit number 1 is a reading by Dr. William
22  Scott of an x-ray taken on December 11, 2009, along with a
23  copy of Dr. Scott's *curriculum vitae*.

24  \\

25  \\

25

1                                    [WHEREUPON, the document identified
2                                    as EMPLOYER'S EXHIBIT 1 was marked
3                                    for identification.]
4            MR. FRAMPTON:  Employer's exhibit number 2 is a
5    reading by Dr. Scott of an x-ray taken April 2, 2008.
6                                    [WHEREUPON, the document identified
7                                    as EMPLOYER'S EXHIBIT 2 was marked
8                                    for identification.]
9            MR. FRAMPTON:  Employer's exhibit number 3 is a
10   reading by Dr. Paul Wheeler of the x-ray taken July 14th,
11   2008.
12                                   [WHEREUPON, the document identified
13                                   as EMPLOYER'S EXHIBIT 3 was marked
14                                   for identification.]
15           MR. FRAMPTON:  Employer's exhibit number 4 is the
16   reading by Dr. William Scott of the x-ray taken July 14th,
17   2008.
18                                   [WHEREUPON, the document identified
19                                   as EMPLOYER'S EXHIBIT 4 was marked
20                                   for identification.]
21           MR. FRAMPTON:  And I would point out for the Court
22   that the first two x-rays are our case in chief x-ray
23   readings.  The second two x-ray readings are the rebuttal
24   readings to claimant's case in chief x-rays.
25           Employer's exhibit number 5 is a report and test

                    **BAYLEY REPORTING, INC.**
                        **(727) 585-0600**

J.A. 216

1    results from Dr. David Rosenberg's examination of the

2    claimant.  I believe it was on January the 11th, 2010 -- or,

3    I'm sorry, the examination was December 11th, 2009.  The

4    report was dated January 11, 2010.

5                        [WHEREUPON, the document identified

6                        as EMPLOYER'S EXHIBIT 5 was marked

7                        for identification.]

8            MR. FRAMPTON:  Employer's exhibit number 6 is a

9    report from Dr. Joseph Renn dated February 22, 2010,

10   together with Dr. Renn's *curriculum vitae*.  Those are our

11   two case in chief medical reports, Your Honor.

12                       [WHEREUPON, the document identified

13                       as EMPLOYER'S EXHIBIT 6 was marked

14                       for identification.]

15           MR. FRAMPTON:  Employer's exhibit number 7 is a

16   reading by Dr. Paul Wheeler of the CT scan taken August 15,

17   2007, along with some statements concerning the validity of

18   the CT scan and digital radiography.

19                       [WHEREUPON, the document identified

20                       as EMPLOYER'S EXHIBIT 7 was marked

21                       for identification.]

22           MR. FRAMPTON:  Employer's exhibit number 8 is a

23   reading by Dr. William Scott of a CT scan dated January 4,

24   2008.

25   \\

[WHEREUPON, the document identified as EMPLOYER'S EXHIBIT 8 was marked for identification.]

MR. FRAMPTON: Employer's exhibit 9 is a reading by Dr. William Scott of a CT scan dated September 2, 2008.

[WHEREUPON, the document identified as EMPLOYER'S EXHIBIT 9 was marked for identification.]

MR. FRAMPTON: Employer's exhibit number 10 is a reading by Dr. William Scott of a CT scan dated December 1, 2006, together with Dr. Scott's *curriculum vitae* and statements regarding digital radiography.

[WHEREUPON, the document identified as EMPLOYER'S EXHIBIT 10 was marked for identification.]

MR. FRAMPTON: Employer's exhibit number 11 is a reading by Dr. Paul Wheeler of a CT scan taken on November 3rd, 2008.

[WHEREUPON, the document identified as EMPLOYER'S EXHIBIT 11 was marked for identification.]

MR. FRAMPTON: Employer's exhibits 7 through 11, Your Honor, are being offered pursuant to section 718.107. And, in accordance with the Benefits Review Board rulings, we are only offering one reading of each CT scan.

28

1   Employer's exhibit number 12 is the testimony of Dr. David

2   Rosenberg taken on February 23rd, 2010.

3                    [WHEREUPON, the document identified

4                    as EMPLOYER'S EXHIBIT 12 was marked

5                    for identification.]

6           MR. FRAMPTON:  And employer's exhibit number 13 is

7   the testimony of Dr. Joseph Renn taken on March 9th, 2010.

8                    [WHEREUPON, the document identified

9                    as EMPLOYER'S EXHIBIT 13 was marked

10                   for identification.]

11          MR. FRAMPTON:  Your Honor, the employer would move

12  the admission of employer's exhibits 1 through 13, as marked

13  and identified.

14          JUDGE SOLOMON:  Ms. Webber, do you have objection

15  to any of the documents?

16          MS. WEBBER:  None, Your Honor.

17          JUDGE SOLOMON:  Mr. Shepherd?

18          MR. SHEPHERD:  No objection, Your Honor.

19          JUDGE SOLOMON:  I would admit EX-1 through EX-13,

20  at least for purposes of identification.

21                   [WHEREUPON, the documents

22                   previously identified and marked as

23                   EMPLOYER'S EXHIBITS 1 through 13

24                   were received into evidence.]

25          JUDGE SOLOMON:  Mr. Frampton, do you have anything

J.A. 219

29

 1  else?

 2          MR. FRAMPTON:  Nothing further, Your Honor.

 3          JUDGE SOLOMON:  So you rest.  All right, I guess

 4  what I would do is direct your attention to DX-28, which is

 5  the issue itemization.  Before we get into anything else,

 6  apparently the claimant last worked in West Virginia, which

 7  is in the Fourth Circuit Court of Appeals.  Is this a Fourth

 8  Circuit case, Mr. Frampton?

 9          MR. FRAMPTON:  Yes, sir, it is.

10          JUDGE SOLOMON:  Mr. Shepherd?

11          MR. SHEPHERD:  Yes, sir.

12          JUDGE SOLOMON:  Ms. Webber, you know what I'm

13  talking about?

14          MS. WEBBER:  Yes, Your Honor.

15          JUDGE SOLOMON:  Is this a Fourth Circuit case?

16          MS. WEBBER:  Yes, Your Honor.

17          JUDGE SOLOMON:  Timeliness as an issue, Mr.

18  Frampton?

19          MR. FRAMPTON:  Your Honor, we can withdraw that.

20          JUDGE SOLOMON:  I have to look at timeliness

21  anyway, but I appreciate being told exactly what I have to

22  look to for the record.  But it's a jurisdictional issue,

23  and this isn't the first time that this claimant applied.

24  Apparently he had applied in the early nineties.  There is a

25  closed claim dated February 4th, 1993, and then subsequently

BAYLEY REPORTING, INC.
(727) 585-0600

J.A. 220

30

1   he filed this application. So it's a subsequent

2   application. Is that right, Mr. Frampton?

3       MR. FRAMPTON: That's correct, Your Honor. And I

4   would point out that that first claim was actually litigated

5   all the way to the Fourth Circuit Court of Appeals.

6       JUDGE SOLOMON: Are there any issues that were

7   adjudicated in favor of the claimant at that time?

8       MR. FRAMPTON: Your Honor, quite frankly, I don't

9   know that there were. I know that the Court determined that

10  there was no pneumoconiosis and no impairment from

11  pneumoconiosis.

12      JUDGE SOLOMON: I would like that issue briefed.

13  I'd like to know whether or not he had any of the medical

14  issues favorably adjudicated at that point in time. And, of

15  course, the reason is that I have to make a determination.

16  I have to compare and contrast what was in the record then

17  with the record now. Now, if I make a determination that he

18  has proved something that had not been proved against him

19  before that, I probably have to look at everything.

20      MR. FRAMPTON: Yes, sir.

21      JUDGE SOLOMON: And I know that you objected to

22  the 1993 record, but I probably have to look at that 1993

23  record in order to be able to tell, you know, fish from fowl

24  and up from down and right from left. Length of employment,

25  the Director established 27 years. Mr. Frampton, would you

BAYLEY REPORTING, INC.
(727) 585-0600

J.A. 221

1  have any problem with that?

2          MR. FRAMPTON:  I do not, Your Honor.

3          JUDGE SOLOMON:  So I would say at least 27 years.

4   The claimant is alleging 28 years.  Is that okay with you,

5   Ms. Webber?

6          MS. WEBBER:  Yes, sir.  Yes, Your Honor.

7          JUDGE SOLOMON:  Pneumoconiosis is an issue, open

8   issue?

9          MR. FRAMPTON:  Yes, sir.

10         JUDGE SOLOMON:  Total disability?

11         MR. FRAMPTON:  Your Honor, total disability at

12  this point is not an issue.

13         JUDGE SOLOMON:  Yeah, I just read the deposition,

14  at least the point in the deposition from Dr. Rosenberg.

15  Survivor, there is no survivor in this case, right?  This is

16  a living miner claim.

17         MR. FRAMPTON:  Yes, sir.

18         JUDGE SOLOMON:  So this is a mistake.  I'm just

19  going to note that for the record.  And you have already

20  indicated that the responsible operator issue is waived.

21  Insurance is hand-in-glove with that issue, so that's

22  waived.  Subsequent claims, I have already said that it is a

23  subsequent claim.  And the other issues that you brought up

24  are probably for appellate purposes only, is that right?

25         MR. FRAMPTON:  That's correct, Your Honor.  And

32

1 forgive me if the Court already mentioned this, but causal

2 relationship, number 6, is also still being contested.

3          JUDGE SOLOMON: Well, that's hand-in-glove, so you

4 have to have one to have the others.

5          MR. FRAMPTON: Yes, sir. And we would preserve

6 for appellate purposes any constitutional challenge we would

7 have to the regulations as applied in this case.

8          JUDGE SOLOMON: Let me find the medical summaries.

9  I have the claimant's right here in front of me. Did you

10 send me a new medical summary, Mr. Frampton?

11         MR. FRAMPTON: Yes, sir, I did, pursuant to the

12 notice of hearing.

13         JUDGE SOLOMON: February 25th, I got it. Okay, so

14 we're going to go through the exercise now in determining

15 what evidence I will use to adjudicate the claim. At the

16 first level of review, these will be the only pieces of

17 evidence that I will use to evaluate the case. The claimant

18 is relying on the OWCP evaluation, which is at DX-14 and was

19 read by Dr. Ahmed.

20         Apparently there is no rebuttal to that -- oh,

21 there is a -- I notice that you put EX-2, Dr. Scott, date of

22 x-ray study 4/2, so that actually is rebuttal of the OWCP

23 evaluation. But you have listed it as your primary piece of

24 evidence, Mr. Frampton.

25         So the claimant is relying on DX-15, which is a

33

1  reading by Dr. Miller of a July 14th, 2008, and CX-1, the

2  reading of the same x-ray by Dr. Alexander.  The employer

3  has used Dr. Scott and Dr. Wheeler to rebut that x-ray at

4  EX-3 and EX-4.  The employer has also listed an x-ray by Dr.

5  Scott dated December 11th, 2009 at EX-1.  Is there any other

6  x-ray evidence I need to know about, or did I make a mistake

7  in reciting any of this evidence?

8           MR. FRAMPTON:  Your Honor, you did not make a

9  mistake, but I would point out that the April 2nd, 2008

10  reading by Dr. Scott, which is at employer's exhibit number

11  2, is actually one of our case in chief readings.

12           JUDGE SOLOMON:  Yeah, I saw that.

13           MR. FRAMPTON:  Okay.  The rebuttal reading of the

14  Department of Labor film is a reading by Dr. Paul Wheeler,

15  and it's in the record as Director's exhibit number 16.

16           JUDGE SOLOMON:  You did not indicate that on the

17  form.

18           MR. FRAMPTON:  All right, Your Honor.  If I could,

19  I would like to be able to amend that form to indicate that

20  Director's exhibit 16 is our rebuttal reading to the

21  Department of Labor film.

22           JUDGE SOLOMON:  Do you have any objection if he

23  does that, Ms. Webber?

24           MS. WEBBER:  No, Your Honor.

25           JUDGE SOLOMON:  So that's Wheeler and it's --

J.A. 224

34

 1        MR. FRAMPTON:  At Director's exhibit 16, Your
 2 Honor.

 3        JUDGE SOLOMON:  Right, I've got that.  4/2/08.
 4 And it's nothing, right?  No evidence of pneumoconiosis or
 5 anything else like that?

 6        MR. FRAMPTON:  There were some findings, Your
 7 Honor, but no pneumoconiosis.

 8        JUDGE SOLOMON:  Pardon me, just for the record,
 9 the guy who has been coughing and snorting and all that
10 stuff is the Judge.  Okay, moving on to the spirometry, the
11 claimant is relying on Dr. Burrell, the OWCP evaluation,
12 April 2nd, 2008, which is at DX-14.  Claimant has also
13 listed Dr. Fernandes at CX-2 and CX-3.  The employer has
14 listed Dr. Rosenberg at EX-5.

15        I just might state that there is already a
16 stipulation with respect to whether there's total disability
17 in this case, so this is probably much ado about nothing.
18 Is there any other PFT's, anything else related to the
19 spirometry that I need to know about?  Ms. Webber?

20        MS. WEBBER:  No, Your Honor.

21        JUDGE SOLOMON:  Mr. Frampton?

22        MR. FRAMPTON:  No, Your Honor.

23        JUDGE SOLOMON:  Mr. Shepherd, you want to say
24 anything about any of this?

25        MR. SHEPHERD:  No, thanks, Your Honor.

J.A. 225

35

1          JUDGE SOLOMON:  Blood gas studies, same thing,
2    claimant is relying on the OWCP evaluation and on CX-4 and
3    CX-5 from Dr. Fernandes.  The employer is relating to Dr.
4    Rosenberg at EX-5.  Let me just state that Dr. Fernandes
5    found that the ABG's meet the criteria, based on what I see
6    here.  Is there anything else with respect to the blood gas
7    studies?  Ms. Webber?

8          MS. WEBBER:  No, Your Honor.

9          JUDGE SOLOMON:  Mr. Frampton?

10         MR. FRAMPTON:  No, Your Honor.

11         JUDGE SOLOMON:  Medical reports -- of course we
12    have the OWCP evaluation from Dr. Burrell.  Is that how he
13    pronounces his name?  Is it Burrell *(pronounced burl)* or
14    Burrell *(pronounced burrelle)*?

15         MS. WEBBER:  It's Burrell *(pronounced burl)*.

16         JUDGE SOLOMON:  The claimant is relying on the
17    1993 report from Dr. Rasmussen and at CX-6 a support letter
18    from Dr. DiMeo.  The employer is relying on reports from Dr.
19    Rosenberg at EX-5 and Dr. Renn at EX-6.

20         Okay, Mr. Frampton, Ms. Webber is not really a
21    lawyer and she doesn't really do this kind of work all the
22    time, so I'm just going to bring this up, and that is,
23    there's two kinds of pneumoconiosis.  There's legal
24    pneumoconiosis, which is not established, necessarily, by
25    the x-ray evidence.  Are you alleging legal pneumoconiosis

J.A. 226

36

1  in this case, Ms. Webber?

2          MS. WEBBER:  I'm not sure, Your Honor.

3          JUDGE SOLOMON:  Okay.

4          MS. WEBBER:  I'm sorry.

5          JUDGE SOLOMON:  Let me just say that you have the

6  right if you want to to go to, let's say, the legal clinic

7  here at --

8          MS. WEBBER:  Uh-huh.

9          JUDGE SOLOMON:  -- the University of Tennessee or

10 to the clinic at Washington and Lee School of Law and talk

11 to them about this.

12         MS. WEBBER:  Yes, Your Honor.

13         JUDGE SOLOMON:  Let me just say that some people

14 put the round peg in the square hole, and vice versa, and I

15 might just state for the record that there is a dispute

16 among physicians about how to evaluate these cases,

17 especially with respect to legal pneumoconiosis.  So, until

18 the time we have briefs, you know, you can --

19         MS. WEBBER:  Research it.

20         JUDGE SOLOMON:  -- have somebody take a look at

21 that for you.  Okay, the claimant is alive and kicking, so

22 there's no autopsy evidence.  Is there any biopsy evidence

23 in this case?  Ms. Webber?

24         MS. WEBBER:  No, Your Honor.

25         JUDGE SOLOMON:  No biopsy evidence.  Mr. Frampton?

BAYLEY REPORTING, INC.
(727) 585-0600

J.A. 227

1          MR. FRAMPTON:  None, Your Honor.

2          JUDGE SOLOMON:  And the claimant has not listed

3   any, in quotes, other medical evidence.  But Mr. Frampton

4   has listed the CT scans.  As he stated, there is a case that

5   says that you get one CT scan for each one taken, and he has

6   listed EX-7, Dr. Scott; EX-8, Dr. Wheeler; EX-9, Dr. Scott;

7   EX-10, Dr. Scott; and EX-11, Dr. Scott.  And all of these

8   are separate.  So you want me to read all of these, right,

9   Mr. Frampton?

10         MR. FRAMPTON:  I do, Your Honor.  Your Honor, I

11   would also point out that, according to the evidence summary

12   that I received from Ms. Webber, she has named one piece of

13   evidence that fits in that other evidence category.

14         JUDGE SOLOMON:  Oh, yeah, you're right.  I'm

15   sorry.  And that is the skin test --

16         MR. FRAMPTON:  Yes, sir.

17         JUDGE SOLOMON:  -- which is the last exhibit that

18   she submitted.

19         MR. FRAMPTON:  Yes, sir.

20         JUDGE SOLOMON:  The claimant has not listed any

21   hospitalization records or any office notes or anything like

22   that.  And neither has the employer.  Now, let me just say

23   about the depositions -- I do this every time -- turning to

24   the rules, okay, I'm going to direct everybody's attention

25   to 20 C.F.R. section 725.458, depositions/interrogatories.

38

1   There are two depositions that were taken in this case.   The
2   last full sentence says, "The testimony of any physician
3   which is taken by deposition shall be subject to the
4   limitations on the scope of testimony contained in section
5   725.457(b)."

6          In reading that section, that last section states,
7   "A physician whose testimony is permitted under this section
8   may testify as to any other medical evidence of record but
9   shall not be permitted to testify as to any medical evidence
10  relevant to the miner's condition that is not admissible."
11  So I don't know whether that applies in this case or not.
12  At first, there was a motion made by employer's counsel to
13  strike the 1993 record.  We know that it's in there.  I
14  haven't really taken a look to see whether there's anything
15  else in there that anybody might have talked about in a
16  deposition.

17         But, to make this simple, I have the rule of Three
18  F's, which I may or may not have made up, which basically
19  goes like this -- if it's fair, it's in the record, I can
20  figure that out pretty easily.  If it's foul, I can tell
21  that I shouldn't use that piece of evidence, and that's
22  pretty easy.

23         But, if it's a mixed question, it's in the fishy
24  category, and I would like the parties to explain to me why
25  I should use a particular piece of fishy evidence in

J.A. 229

39

1    determining whether I should accept an opinion.

2          Typically, the doctor will say, well, I read this,
3    that and the other and my opinion is based on all the
4    evidence that I read. Well, how do I know it wasn't based
5    on the wrong evidence? How do I know it was all based on
6    valid evidence? So it's up to the parties to -- in the
7    deposition, you could have asked about how do you come up
8    with this conclusion. But some people do and some people
9    don't.

10         I also notice these are like one-sided
11   depositions. They weren't really depositions. They're sort
12   of like sworn statements. And, really, you didn't have any
13   cross examination, I'll say, of Dr. Rosenberg. But I'll
14   take that into consideration. And, if there's an argument
15   to be made about that, I want the parties to tell me one way
16   or the other about that issue. Okay, is there anything else
17   that I need to know about that I -- about any piece of
18   evidence that I have to use to evaluate this case? Ms.
19   Webber?

20         MS. WEBBER: No, sir.

21         JUDGE SOLOMON: Mr. Frampton?

22         MR. FRAMPTON: Your Honor, I don't think that
23   there is anything else that you need to know about any piece
24   of evidence. But I do have a position that I need to put on
25   the record at some point concerning the evidence.

J.A. 230

40

1          JUDGE SOLOMON:  Okay.  This is that point.

2          MR. FRAMPTON:  This is that point?  Your Honor, in

3  light of the statements that the Court just made having to

4  do with --

5          JUDGE SOLOMON:  The fishy evidence?

6          MR. FRAMPTON:  Well, what physicians can rely on

7  or not rely on.  Obviously, this was a situation where it's

8  a little bit unusual from the standpoint that we had this

9  old evidence from the prior case that has been offered.  And

10  that includes -- for instance, Dr. Rasmussen's report

11  clearly is based upon and addresses an x-ray interpretation

12  that is not in the record, a pulmonary function test that is

13  not to be considered, a blood gas test that is not to be

14  considered.

15          And that is in the record as a part of Director's

16  exhibit 13 and was in the record at the time when the

17  medical evidence was developed here.  If the Court is going

18  to make a determination from an evidentiary standpoint that

19  that evidence cannot be relied upon or addressed, then I

20  would ask for an opportunity to know exactly what evidence

21  that is in the record that cannot be relied upon and then

22  have an opportunity to have my physicians render an opinion

23  based upon the evidence that is properly admitted by the

24  Judge.

25          JUDGE SOLOMON:  Well, it doesn't come out to what

J.A. 231

41

1    your physicians say.  I mean, they are already in the
2    record, and you're not going to get another bite at that
3    apple.  But I can say that we have three or four competing
4    ideas that go through the record.

5         First of all, anything that Dr. Rasmussen would
6    have said in 1993 is also subject to the fact that
7    pneumoconiosis is a progressive disease, and therefore we
8    have the concept that the more recent evidence usually is
9    more probative or better than the evidence that's from,
10   let's say, 1993, which is some time ago.  It isn't like it
11   was the day before yesterday.

12        Second of all, if it's bootstrapping evidence that
13   is not in the record, then the parties would tell me how it
14   might be valid one way or the other.  That's why it falls
15   within the fishy category.  And, believe me, sometimes I
16   accept a valid argument based on what you would consider to
17   be something that's less than foolproof testimony in the
18   record.  I mean, we don't have a perfect record in most of
19   these cases.

20        And, thirdly, this isn't the kind of case where we
21   have a lot of treatment records.  I mean, I have cases where
22   an entire filing cabinet is filled up with the
23   hospitalization records, let's say, of a given claimant,
24   where the claimant has been seen by 40 or 50 doctors over a
25   period of years.

J.A. 232

42

1       And then there's an opinion that's given by the
2   experts on both sides. Typically, there's two doctors for
3   the claimant and there's two doctors for the employer, and
4   yet there are all these hospital records. You get them from
5   all over the place. You get them from the VA, for example.
6   You know, you can't even read the names of the doctors that
7   are involved.

8       And we have some people who go to the hospital all
9   the time, and we have some people who don't go to the
10  hospital at all. So there are variations on the theme. I
11  want the parties to tell me what the variations on the theme
12  are. I don't want to do that for you. I don't want to in
13  some way anticipate something that isn't going to happen.

14       MR. FRAMPTON: I understand.

15       JUDGE SOLOMON: I don't want to spend a lot of
16  thought on something that doesn't require any, and that's
17  what happens in these cases.

18       MR. FRAMPTON: All right.

19       JUDGE SOLOMON: Okay.

20       MR. FRAMPTON: And, Your Honor, not to belabor the
21  point but just for the sake of making a record -- since I
22  think I'm required to do that based upon the court cases
23  that I have read --

24       JUDGE SOLOMON: Some of them with my name on it,
25  yeah, I know.

BAYLEY REPORTING, INC.
(727) 585-0600

J.A. 233

43

1      MR. FRAMPTON:  But, as I understand it, I have
2  requested that there be a specific evidentiary ruling
3  concerning these type of issues that the Court has mentioned
4  regarding physicians that have relied upon what appears to
5  me to be inadmissible evidence.

6      JUDGE SOLOMON:  Well, let me just say, you did not
7  bring up when most people bring up when they are appearing
8  in front of me, and that is the regulatory material that's
9  contained in the 2000 Department of Labor regulations.
10 There are certain legislative facts that I will accept from
11 that material.  This has gone up in all the Circuits.  There
12 are Sixth Circuit cases that say that these are legislative
13 facts.  I don't know that there are Fourth Circuit -- and
14 this is a Fourth Circuit case.

15     MR. FRAMPTON:  Right.

16     JUDGE SOLOMON:  I don't know that there are Fourth
17 Circuit cases that actually say that these are legislative
18 facts.

19     MR. FRAMPTON:  Okay.

20     JUDGE SOLOMON:  So this issue about smoking and
21 whether you can tell one way or the other from smoking or
22 mining, these issues are the -- these are where the rubber
23 meets the road in these cases.

24     MR. FRAMPTON:  Uh-huh.

25     JUDGE SOLOMON:  And I know, you know, just from

J.A. 234

1 reading the part of the deposition from Dr. Rosenberg where
2 he said the guy is totally disabled but the FEV rate was too
3 fast, let's say, there was too much of a fall in the FEV
4 rate to have come from mining. I mean, that's all
5 controversial stuff.

6       Same thing with whatever Rasmussen might have said
7 in 1993, knowing what the state of medicine is now with
8 respect to those functions. So this is not that kind of
9 case. I get the kind of case sometimes where the parties
10 put in 45 journal articles and they want me to read them
11 all. This isn't that kind of case.

12       MR. FRAMPTON: And, Your Honor, as I understand
13 it, your ruling is that you're not going to give me an
14 opportunity to have my physicians address again the medical
15 evidence that the Court determines is admissible and
16 properly considered?

17       JUDGE SOLOMON: Had there been some meatball
18 hanging out there -- to use the vernacular -- I probably
19 would have permitted you to do that. But we closed the
20 record. There is nothing else that's going to come into
21 this record. And that's why we have liberal rules of
22 modification in these cases.

23       MR. FRAMPTON: All right.

24       JUDGE SOLOMON: So you'll get another -- you can
25 get another bite at the apple in these cases. I personally,

1  if I were in the legislature, I would probably make some
2  changes.  But I'm not in a position to do that.
3          MR. FRAMPTON:  And then --
4          JUDGE SOLOMON:  I'm just the Judge.
5          MR. FRAMPTON:  I'm sorry, Your Honor?
6          JUDGE SOLOMON:  I'm just the Judge and I hear the
7  cases and I make the calls, that's all.
8          MR. FRAMPTON:  And then --
9          JUDGE SOLOMON:  So we have a closed record right
10  now in this case.
11          MR. FRAMPTON:  All right, Your Honor.  And then
12  one other thing that the Court mentioned was that the Court
13  may accept or rely upon certain provisions in the preamble
14  to the regulations as amended in 2001.  And I would request
15  that the Court issue an order of some sort identifying which
16  of --
17          JUDGE SOLOMON:  I just did.
18          MR. FRAMPTON:  Well, if the Court could identify
19  the specific provisions in the preamble?
20          JUDGE SOLOMON:  Well, I don't have to do that.
21  It's all in there.  It's right in the regulations.  They
22  changed the regulations.
23          MR. FRAMPTON:  Right.
24          JUDGE SOLOMON:  And they said that COPD can be the
25  basis for pneumoconiosis.

46

1          MR. FRAMPTON:  I understand, Your Honor.

2          JUDGE SOLOMON:  Legal pneumoconiosis.

3          MR. FRAMPTON:  I would like the record to reflect,

4  then, that I object to the Court relying upon anything

5  that's in the preamble itself and let the record reflect

6  that objection.

7          JUDGE SOLOMON:  Well, what can I say?  There are

8  lots of cases up there, and at least in the Seventh Circuit

9  and the Sixth Circuit the Court is not going to accept what

10  you have, your objection.  In the Fourth Circuit, it could

11  very well be that there might be an issue, but I don't think

12  so.  Okay, is there anything else anybody wants to say about

13  this case?

14          MS. WEBBER:  No, Your Honor.

15          MR. FRAMPTON:  Nothing further, Your Honor.

16          JUDGE SOLOMON:  Okay.  And one more time -- Ms.

17  Webber, this is the first day she has ever done these cases.

18          MR. FRAMPTON:  Oh, okay.

19          JUDGE SOLOMON:  And I have been advising her that

20  it's a good idea to have a lawyer.

21          MS. WEBBER:  That is true, but we have a difficult

22  time finding attorneys that will take these cases.

23          JUDGE SOLOMON:  Well, let me just say that I go to

24  Duluth, I go to Miami, I go to Puerto Rico --

25          MS. WEBBER:  Uh-huh.

                    **BAYLEY REPORTING, INC.**
                         **(727) 585-0600**

J.A. 237

1        JUDGE SOLOMON: -- and we get some black lung
2   cases in those places. And, invariably, the same lawyers
3   appear in the cases.

4        MS. WEBBER: Uh-huh.

5        JUDGE SOLOMON: Mr. Frampton is nodding his head.
6   He's one of them, okay? So all I can say is, where there's
7   a will there's a way. And I have told you that I know that
8   the law school here is interested because they contact me.
9   You know, I was going to do the hearings right at the law
10  school.

11       MS. WEBBER: Uh-huh.

12       JUDGE SOLOMON: And I have done things like that
13  before. And we know that there is a black lung clinic at
14  Washington and Lee, as I told you. So sometimes I'll have a
15  lay representative and I get the brief and it looks like it
16  was written by a million-dollar law firm from New York. And
17  I suspect that those briefs are written by the law
18  professors at the various law schools. I don't really know.
19   Okay, if there's nothing else, the time is now 3:30, and
20  the hearing is closed.

21             [WHEREUPON, the hearing was concluded at
22             3:30 p.m.]

23  \\

24  \\

25  \\

48

1                              **REPORTER'S CERTIFICATE**

2

3    TITLE:              Arvis R. Toler v. Eastern Associated Coal

4                        Corporation, and Director, OWCP

5    CASE NO.:      2009-BLA-05255

6    DATE:             March 17, 2010

7    LOCATION:      Knoxville, Tennessee

8

9              This is to certify that the attached proceedings

10   before the United States Department of Labor, Office of

11   Administrative Law Judges, were held according to the

12   record, and that this is the original, complete, true and

13   accurate recording accomplished at this hearing.

14

15                                                  **March 17, 2010**

16   _____

17            **BAYLEY REPORTING, INC.**                          **Date**

18

19

20

21

22

23

24

**BAYLEY REPORTING, INC.**
**(727) 585-0600**

# Medical History and Examination for
## Coal Mine Workers' Pneumoconiosis

[ Reset ]  [ Print ]

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



Note: This report is authorized by law (30 USC 901 et. seq) and required to receive a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. The method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

## A. Patient Information
(Please type all responses.)
OMB No.: 1215-0090
Expires: 07-31-08

1. Name and Address

name: Arvis R Toler

PO Box 348

city: Huntsville    state: TN    zip: 37756

2. DOL Claim No.

XXX-XX-5366

3. Telephone No.

(423)663-3529

4. Date of Exam

04/02/2008

5. Date of Birth

6. Personal Physician (name, address, phone no.)

name: Dr. Wolfe    (423)663-3529

Mountain Peoples Clinic

city:    state:    zip:

7. Examining Physician (name, address, phone no.)

REACHS Community Health Center    (423)562-1705

Dr. John Burrell

502 West Central Avenue

LaFollette    state: TN    zip: 37766

## B. Employment History
(Please type or neatly print all responses.)

[X] "Employment History", Form CM-911a, or equivalent (dated 02/26/2008 ) is attached. Please review the form and, with the miner's help, **complete only blocks 1.a, below,** describing his/her most recent coal mine job (of at least one year's duration). Then, move on to "C. Patient History"

[ ] CM-911a is **not** attached - complete both sections, 1. and 2., below.

1. Coal Mine Employment - CME. List most recent employment first. In line (a.) describe the last job of at least one year's duration. (Include in all lines any coal mine construction or transportation work, or work in a mine preparation facility.)

| Name of Company | Job Title and Description of Job's Physical Requirements | From | To |
|---|---|---|---|
| a. Last CME held at least one year. | | | |
| Eastern Association Coal | Surface- Prep plant-electrician | 1985 | 1993 |
| b. Other CME: | alleges 28 years total 16-17 years underground & approx. 11 years surface | | |

c. Additional number of years in CME not described above: _____ years.

2. **Other Employment - Not CME.** (If the employment exposed the patient to an occupational toxic inhalant hazard, describe the inhalant under "Job Title and Description".)

| Name of Company | Job Title and Description | From (mm/yy) | To (mm/yy) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

RECEIVED
MAY 0 5 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

## C. Patient History (Family - Medical - Social)
(Please type or neatly print all responses.)

1. Family History.

Have the patient's parents, children, or other "blood" relatives ever had any of the following:

|  | Yes | No |  | Yes | No |
|---|---|---|---|---|---|
| High blood pressure | | X | Asthma | | X |
| Heart Disease | | X | Allergies | | X |
| Tuberculosis | | X | Emphysema | | X |
| Diabetes | | X | Stroke | X | |
| Cancer | X | | | | |

If "Yes," identify family member
mother-cancer(kidney)
father-stroke

DIRECTOR EXHIBIT
NO _14_ CONSISTING
OF _37_ PAGES

Form CM-988
Rev.Jan.1997

J.A. 240

## C. Patient History (continued)

(Please type all responses.)

### 2. Individual Health/Medical History.

#### a. Does the patient have a history of:

| Yes | No | | When Manifested | | Yes | No | | When Manifested |
|---|---|---|---|---|---|---|---|---|
| | ☒ | Frequent Colds | | | | ☒ | Arthritis | |
| ☒ | | Pneumonia | X 3 | | ☒ | | Heart Disease/Problems | |
| ☒ | | Pleurisy | X 1 | | | ☒ | Allergies | |
| ☒ | | Attacks of wheezing | | | | ☒ | Cancer (of            ) | |
| | ☒ | Tuberculosis | | | | ☒ | Diabetes Mellitus | |
| | ☒ | Chronic bronchitis | | | | ☒ | High Blood Pressure | |
| | ☒ | Bronchial Asthma | | | | ☒ | Connective Tissue Disease | |

#### b. Other Significant Conditions or Serious Illnesses (when diagnosed?)

COPD
Right Middle Lobe Syndrome
ASHD with CAD

#### c. Hospitalizations (reasons and dates):

Pneumonia- 1998-99
ASHD with Coronary Arteriogram-1990
ASHD with Angioplasty > stenting 1990
ASHD with Angioplasty>stenting 2004

RECEIVED
MAY 0 5 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

#### d. Surgery:

See Above

### 3. Social History.

#### a. Smoking History

| | Never Smoked | ☒ Has Stopped Smoking | | Currently Smoking |
|---|---|---|---|---|

Started:              ; Stopped:              
Smoked what? See Below
How much:              cigarette(s)   per day

Started:              
Smokes what?              
How much:              cigarette(s)   per month

#### b. Other Pertinent Social History (e.g. drug or alcohol use; strenuous hobbies):

Smoked approximately 30 years, quit 1996 or 1997.

## D. Present Illness/Physical Examination

(Please type or neatly print all responses.)

1. Chief Complaints/Symptoms - as described by patient. Please comment on all "Yes" answers (e.g. describe frequency, duration, and/or severity of symptoms).

| Yes | No | | Comments |
|---|---|---|---|
| ☒ | | Sputum (daily?) | color-white & foamy |
| ☒ | | Wheezing (daily?) | |
| ☒ | | Dyspnea (quantitate) | |
| ☒ | | Cough | |
| | ☒ | Hemoptysis | |
| | ☒ | Chest pain (Inciting Factor): | |
| | ☒ | Orthopnea | |
| | ☒ | Ankle edema | |
| ☒ | | Paroxysmal Nocturnal Dyspnea | I walk around |

(Indicate in D.4., next page, any of the above symptoms manifested during the exam.)

2. Other complaints. (Include here the patient's description of any limitations in physical activities like walking, climbing, and lifting.)

Short of breath with any exertion.

J.A. 241

**D. Present Illness/Physical Exam** (continued)                    (Please type all responses.)

3. Current Treatment (including medications):

,pravachol 80 mg qd   zetia 10 mg qd   singular 10 mg qd   spiriva handihaler 1 cap. daily   symbicort 160/4.5 2 puffs bid   actonel 35 mg weekly
nebulizer tx with unit dose albuterol & atrovent tid   Oxygen 2 L/M NC   combivent inhaler 2 puffs q4pm   mucinex 600 mg qid

4. **Physical Findings:** Based on Your Physical Examination.
(Show all findings, especially those pertinent to the respiratory system and the cardiovascular system.)

a. Fill in the appropriate data or response:

| General | | Thorax & Lungs | | Nose | | Abdomen | |
|---|---|---|---|---|---|---|---|
| | | Inspection | increased ap diamter | Membranes | moist - pale | Peristalsis | normal |
| **Height** | 65 | | dorsal kyphosis | Obstruction | none | Tenderness | none |
| **Weight** | 115 | Palpation | | Discharge | none | Ascites | none |
| | | | | Septum | midline | Liver | nonpalpable |
| Temperature | 98.6 | Percussion | hyperresonant | Sinuses | clear | Spleen | nonpalpable |
| Pulse | 84 | | | | | Kidneys | |
| Respiration | 13 | Auscultation | prolonged expiratory phase | **Throat** | | Urinary bladder | |
| B.P. rt. arm | 133/85 | | | Erythema | none | Masses | none |
| B.P. lf. arm | 139/87 | | | Exudate | none | Hernia | none demo |
| Development | | **Heart** | | Tonsils | none | | |
| Nutrition | thin | Peripheral Pulse | 2/2 + bilateral | Pharynx | clear | | |
| Hydration | normal | PMI | wnl | | | | |
| Orientation | x 3 | Pulsation | normal | **Neck** | | | |
| Mentation | | Epigastric Cardiac Pulsation | | Masses | none | | |
| Personality | | | | Thyroid | no thyromegaly | | |
| Mood | | Thrills | none | Trachea | midline | | |
| | | Rhythm | normal sinus | Arteries | no bruits | | |
| **Extremities** | | Sounds | normal | Veins | no jvd | | |
| Color | normal | Gallop | none | | | | |
| Clubbing | none | Murmurs | none | **Musculoskeletal** | | | |
| Edema | none | | | Spine | dorsal kyphosis | | |
| Varicosities | none | Friction rub | none | Joints | no joint effusion or deformity | | |
| Arterial Pulses | good bilateral | | | Muscles | 2/2+ bilateral strength | | |

b. Other relevant findings - narrative summary:

missing distal phalanx- 3rd finger right hand
edentulous



RECEIVED
MAY 0 5 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

5. **Summary of Diagnostic Testing** -in the space below, check the applicable block(s) next to any test results (including those conducted in conjunction with this physical exam) which you reviewed and relied upon, at least in part, to base your medical assessments and conclusions - especially those on the next page. Be sure to show the date(s) of each test, and summarize the results.

| | | Dates | Summary of Results |
|---|---|---|---|
| ✓ | Chest X-ray | 04/02/2008 | Simple pneumoconiosis category s/t, 1/0- Chronic Obstructive Pulmonary Disease |
| ✓ | Vent Study (PFS) | 04/02/2008 | Severe obstructive impairment with FEV1 of 0.60 (24% of predicted) |
| ✓ | Arterial Blood Gas | 04/02/2008 | Mild hypoxemia PO2 decreased 70, marked desaturation on exercise PO2 49 |
| ☐ | Other: EKG | 04/02/2008 | Normal tracing |
| ☐ | Other: | | |

J.A. 242

**D. Present Illness/Physical Exam** (Continued)                    (Please type all responses.)

**6. Cardiopulmonary Diagnosis (es): (And** provide the **basis (as)** for your stated diagnosis (es).)

Simple pneumoconiosis category s/t, 1/0; severe chronic obstructive pulmonary disease; ASHD with CAD, based on history, physical, chest x-ray, ABG's, & PFS.

**7. Etiology of Cardiopulmonary Diagnosis (es):**(List Primary and Secondary Causes - if applicable - and Provide Rationale.)

28 years exposure to environmental hazardous dust in coal mining employment and 30 years history of tobacco abuse.

**8. Impairment** - If the patient has chronic respiratory or pulmonary disease, give your medical assessment - With Rationale - of:

a. The degree of severity of the impairment, particularly in terms of the extent to which the impairment prevents the patient from performing his/her current or last coal mine job of one year's duration: (Refer to section B.1.a. of this form.)

Severity of patients chronic pulmonary disease would prevent his performance of his previous coal mining duties.

b. The extent to which each of the diagnoses listed in D.6. above contributes to the impairment:

Chronic pulmonary disease is the major disabling factor.

RECEIVED

MAY 05 2008

ESA/OWCP/DCMWC
MT. STERLING, KY

**9. Non-Cardiopulmonary Diagnosis** -if the patient has any disabling **non-respiratory condition(s)** indicate what the condition is and describe its degree of impairment, especially as it may affect the patient's ability to perform his coal mine work:

ASHD with CAD, s/p angioplasty and stent placement- not of significant degree to prevent performance of previous coal mine work.

**E. Physician Referral**

Should this patient be referred to another physician for further evaluation?  ☐Y  ☒N    Has referral been made?  ☒Y  ☐N
For what reason?

**F. Physician Signature**

I certify that the information furnished is correct and am aware that my signature attests to its accuracy. I am also aware that any person who willfully makes any false or misleading statement or representation in support of an application for benefits shall be guilty under Title 30 USC 941 of a misdemeanor and subject to a fine of up to $1,000., or to imprisonment for up to one year, or both.

Signature: *[signature]*                    Date: 04/30/2008

(Physician's name should be typewritten on front page of this form.)

---

**Public Burden Statement**

We estimate that it will take an average of 30 minutes per response to complete this information collection, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Division of Coal Mine Workers' Compensation, U.S. Department of Labor, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210. **DO NOT SEND THE COMPLETED FORM TO THIS OFFICE**

Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

J.A. 243

# Employment History

**U.S. DEPARTMENT OF LABOR**
Employment Standards Administration
Office Of Workers' Compensation Programs
Division Of Coal Mine Workers' Compensation

OMB No. 1215-0052
Expires 08/31/2008

NOTE: Persons are not required to respond to this collection of information unless it displays currently valid OMB control Number.

Please complete as accurately as possible the miner's complete employment history. (When employment was in coal mining, specify whether the mine was a strip mine or an underground mine.) This report is authorized by law (30 U.S.C. 901 et. seq.). While you are not required to respond, your cooperation is needed to ensure that full and proper consideration is given to this claim. Disclosure of the social security number is voluntary. Failure to disclose such number will not result in the denial of any right, privilege, or benefit to which you may be entitled.

**Miner's Name**

Arvis Riley Toler

**Miner's Social Security Number**

| 1. Name and Address of Employer (City and State) | 2. Type of Industry. (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other.) | 3. Occupation (Specify type of work) | 4. Period of Employment Mo/Yr \|Mo/Yr | 5. Exposure to dust, gases or fumes? (Yes/No) |
|---|---|---|---|---|
| Peabody Coal | Coal Mining Extraction & Prep of Coal | | | |
| | | | | |
| EASTERN Associated Coal Corp. | Coal Mining, Extraction & Prep of Coal | Shutting Down Electrician Prep Plant Elect | 1-66  3-93 | yes |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

J.A. 244

Form CM-911a
Rev. June 1996

| 1. Name and Address of Employer (City and State) | 2. Type of Industry. (Indicate if coal mining, extraction or preparation of coal, coal mine construction, or transportation in or around a coal mine, steel, manufacturing or other.) | 3. Occupation (Specify type of work) | 4. Period of Employment Mo/Yr |Mo/Yr | 5. Exposure to dust, gases or fumes? (Yes/No) |
|---|---|---|---|---|
| | | | RECEIVED MAY 05 2008 ESA/OWCP/DCMWC MT. STERLING, KY | |
| | | | RECEIVED FEB 26 2009 ESA/OWCP/DCMWC MT. STERLING KY | |
| | | | | |

I hereby certify that the information given by me on and in connection with this form is true and correct to the best of my knowledge and belief. I am also fully aware that any person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit under this title shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine of not more than $1,000.00, or by imprisonment of not more than one year or both.

| 6. Signature of claimant *(First, middle, last)* | 7. Date *(Month, day, year)* |
|---|---|
| X Lewis Riley Tabor | 2-20-08 |

| 8. Mailing Address *(Number, Street, Apt. No., P.O. Box or Rural Route)* | 9. City and State |
|---|---|
| Po Box 348, Huntsville TN 37756 | Huntsville TN |

| 10. Zip Code | 11. County Where You Live | 12. Telephone Number *(Include Area Code)* |
|---|---|---|
| 37756 | Scott | 423-663-3529 |

Witnesses are required only if this application has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the applicant must sign below, giving their full address.

| Signature of witness | Signature of witness |
|---|---|
| | |
| Address *(Number, Street, City, State & Zip Code)* | Address *(Number, Street, City, State & Zip Code)* |

**PRIVACY ACT STATEMENT**
The following information is provided in accordance with the Privacy Act of 1974. (1) Submission of this information is required under the Black Lung Benefits Act. (2) The information will be used to determine eligibility for and the amount of benefits payable under the Act. (3) The information may be used by other agencies or persons in handling matters relating, directly or indirectly, to the subject matter of the claim, so long as such agencies or persons have received the consent of the individual claimant or beneficiary, or have complied with the provisions of 20 CFR Part 725. (4) Furnishing all requested information will facilitate the claim adjudication process; and the effects of not providing all or any part of the requested information may delay the process, or result in an unfavorable decision or a reduced level of benefits. (Disclosure of your Social Security number is voluntary; the failure to disclose any such number will not result in the denial of any right, benefit or privilege to which an individual may be entitled).

**PUBLIC BURDEN STATEMENT**
Public reporting burden for this collection is estimated to average 40 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and composing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Room C3525, 200 Constitution Avenue, N. W., Washington, D.C. 20210. DO NOT SEND THE COMPLETED FORM TO THIS OFFICE

J.A. 245

Roentgenographic Quality Rereading

**X-RAY FILED**

**RE-READ**

MAY 2 7 2005



**U. S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

**NOTE:** This report is authorized by law (30 U.S.C., 901 et. seq. and 20 CFR 718.102) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

OMB No. 1215-0090
Expires: 07/31/2008

Please record your quality finding of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1A. Miner's Name (Print) | 1B. Date of X-ray | 1C. Miner's Social Security Number | 1D. Film Quality (If not Grade 1 give reason): |
|---|---|---|---|
| **Arvis R Toler** | 0 4 0 2 0 8 <br> MO.   DAY   YR. | **XXX-XX-5366** | 1   2   3   U/R |

2A. ANY OTHER ABNORMALITIES?        YES ☑        Complete 2B and 2C        NO ☐        Proceed to Section 3

2B. OTHER SYMBOLS (OBLIGATORY)

| O | ax | bu | ca | cn | co | cp | cv | di | ef | em | es | fr | hi | ho | id | ih | ki | pl | px | rp | tb |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION    OD ☐    (Specify od.)    Date Personal Physician notified?    Mo.   Day   Yr.

2C. OTHER COMMENTS

2D. SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 2C?    Yes ☐   No ☑    Proceed to Section 3

3A. FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION: _____
DOL Medical Provider Number (if applicable): _____
Was film taken by a registered radiographer/radiographic technologist? ☐ Yes   ☐ No    _____ State
Name _____    Registration No. _____

3B. Physician Interpreting Film (Print Name): _____
Are you: Board-certified Radiologist? ☐ Yes  ☐ No    Board-eligible Radiologist? ☐ Yes  ☐ No    B-reader? ☐ Yes  ☐ No

3C. I certify that this film has been re-read for quality in accordance with the instructions provided by 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits Under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one-year, or both.

PHYSICIAN'S SIGNATURE _____    DATE OF RE-READING _____ (Mo., Day, Yr.)

**Public Burden Statement**

We estimate that it will take an average of 3 minutes to complete this information collection, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information. If you have any comments regarding these estimates or any other aspect of this survey, including suggestions for reducing this burden, send them to the Division of Coal Mine Workers' Compensation, U. S. Department of Labor, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210. DO NOT SEND THE COMPLETED FORM TO THIS OFFICE

NOTE: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

Form CM-933b
Rev. Sept. 2001



THIS X-RAY HAS BEEN RE-READ BY A
CERTIFIED "B" READER

J.A. 246

# Roentgenographic Interpretation

**U.S. DEPARTMENT OF LABOR**
EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
DIVISION OF COAL MINE WORKERS' COMPENSATION

RECEIVED
MAY 05 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

OMB No. 1215-0090
Expires 07/31/2008

**Note:** This report is authorized by law (30 USC 901 et. seq.) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a Social Security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

Please record your interpretation of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

| 1. Miner's Name (Print) | 1A. Date of X-Ray | 1B. Miner's Social Security Number | 1C. Film Quality (if not Grade 1, Give Reason) |
|---|---|---|---|
| **Arvis R Toler** | 04 / 02 / 08 (MO / DAY / YR) | XXX-XX-5366 | roller marks on film; 1  2 X  3  U/R |

**1D. Is Film Completely Negative?**  YES ☐  NO ☒ Complete Section 2A

**2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis?** YES ☒ Complete 2B and 2C    NO ☐ Proceed to Section 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE — PRIMARY: p ☒, q t, r u ; SECONDARY: p s, q ☒, r u

b. ZONES: X X / X X  R L

c. PROFUSION: 0/- 0/0 0/1 ; 1/0 ☒ 1/1 1/2 ; 2/1 2/2 2/3 ; 3/2 3/3 3/+

**2C. LARGE OPACITIES** SIZE: 0 ☒ A B C — Proceed to Section 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?** YES ☐ Complete 3B, 3C and 3D    NO ☒ Proceed to Section 4

**3B. PLEURAL THICKENING** (diaphragm plaque SITE O R L; Costophrenic Angle SITE O R L)

**3C. PLEURAL THICKENING...Chest Wall** (circumscribed plaque and diffuse sections)

**3D. PLEURAL CALCIFICATION** — Proceed to Section 4

**4A. ANY OTHER ABNORMALITIES?** YES ☒ Complete 4B and 4C    NO ☐ Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY):** em ☒

OD (Specify od.) — Date Personal Physician notified?

**4C. OTHER COMMENTS** Atherosclerotic Aorta (aa).

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C? YES ☐ NO ☐ Proceed to Section 5

**5A.** FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION: DOL Medical Provider Number (if applicable): ___
Was film taken by a registered radiographer/radiographic technologist? ☐ Yes ☐ No
Name ___ Registration No. ___ State ___

**5B.** Physician Interpreting Film (Print Name): Afzal U. Ahmed m.D

Are you: Board-Certified Radiologist? ☒ Yes ☐ No.   Board-eligible radiologist? ☐ Yes ☐ No.   B-reader? ☒ Yes ☐ No

5C. I certify that this film has been interpreted in accordance with the instructions provided on Form CM-954a and/or 20 CFR 718, Subpart B, 718.102 and Appendix A...

PHYSICIAN'S SIGNATURE ___(signed)___   DATE OF READING 4/17/08 (Mo., Day, Yr.)

Form CM-933 Rev. Nov. 1996

J.A. 247

*Professional Imaging, Inc.*
**Diagnostic and Interventional Radiology**
**200 New Hope Road Suite 7**
**P.O. Box 1559**
**Princeton, WV 24740**
**Phone (304) 487-1076**

Afzal U. Ahmed, M.D.
Edward D. Aycoth, M.D.
Daniel T Fowler, M.D.
David L. Groten M.D

Richard T Mull, M.D.
Dana O. Olson, M.D.
Kishor S Pathak, M.D.
Dilip B Patel, M.D.
Michael E. Shahan, M.D.

RECEIVED
MAY 05 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

| | |
|---|---|
| **NAME** | SS# ▓▓▓▓▓▓▓<br>TOLER, ARVIS R. |
| | AGE |
| **REFERRING DR.** | REACHS Community Health Center |
| **EXAMINATION** | CHEST |

X-RAY    REACHS

DATE    04/02/08

PA CHEST FOR PNEUMOCONIOSIS:

CLINICAL HISTORY: Patient worked in the coalmines for 16 to 17 years and is an ex-smoker with an approximate 30-year smoking history.

Film quality is #2: there are roller marks on the film.

The cardiac size and configuration is normal. There are atherosclerotic changes of the aorta. Minute soft irregular parenchymal densities measuring from 1.5 millimeters up to 3 millimeters are seen in the lower four lung zones; changes are more apparent on the left side. There are changes of chronic obstructive pulmonary disease. There is minimal pressed lung parenchyma at the left lung base. No evidence of localized pneumonia. The trachea, mediastinum, and visualized bony structures are normal.

No evidence of pleural thickening or calcification. There is blunting of both costophrenic angles which could be from a small effusion or scarring.

IMPRESSION:

Simple pneumoconiosis category s/t, 1/0.

Atherosclerotic aorta (aa).

Chronic obstructive pulmonary disease (em).

AA/cw
D&T: 04/20/08

AFZAL AHMED, M.D.

| Validation Of Pulmonary Function And Arterial Blood Gas Studies | **U. S. Department of Labor** Employment Standards Administration Office of Workers' Compensation Programs |
|---|---|
| Miner's Name: | Social Security Number: |
| **Arvis R Toler** | **XXX-XX-5366 LM C** |
| Claims Examiner: *(signature)* | Office: |
| **Elizabeth G Piersawl** | **Mt. Sterling** |

**VENTILATORY STUDIES**

**Test Results:**

Date of test: ____04/02/2008____

☒ Vents are acceptable

☐ Vents are not acceptable*

    ☐ Insufficient number of FVC, FEV1 or MVV tracings without explanation for deficiency.

    ☐ Tracings improperly identified

    ☐ Tracings are not legible.

    ☐ Report does not include tracings.

    ☐ Equipment does not meet specifications.

    ☐ Less than optimal effort, cooperation and comprehension.

    ☐ Equipment not approved by NIOSH.

    ☐ Studies improperly performed.

    Explain: _____

(if different then reported)

FVC in L/BTPS: _____

FEV1/FVC in L/BTPS: _____

MVV in L BTPS/min: _____

RECEIVED

MAY 1 4 2008

ESAIOWOP/DCRWC
MT. STERLING, KY

---

**ARTERIAL BLOOD GAS STUDIES**

Date of Test ____04/02/2008____

**Test Results**

Test is technically acceptable

☒ Yes   ☐ No

If test is not acceptable, indicate the reason:

    ☐ Venous sample  ☐ See Explanation

    Explain: _____

Resting ___A___   Exercise ___A___ .

PO2 $70|44$ mmHg   PCO2 $36|34$ mmHg

pH $7.46 | 7.45$

---

**Other Pulmonary Function Studies**

| | |
|---|---|
| Date of Test: _____ | Test is technically acceptable |
| Name of Test: _____ | ☐ Yes    ☐ No |
| Test Results: _____ | If test is not acceptable, indicate reason: |

---

**PHYSICIAN CONSULTANT:**

____J. MICHOS MD____
(Name – Print or Type)

_____ $5|12|or$ .

(Signature)    (Date)

*Test does not meet the technical quality standards applicable at the time the evidence was submitted (Sec. 727.206, 410.430, 718.103, 718.105, Appendices B and C)

Form CM-1104
Rev. Nov. 1986

J.A. 249

**Report of Arterial Blood Gas Study**

| Reset | Print |

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



OMB No. 1215-0090
Expires: 07-31-2008

This report is authorized by law (30 USC 901 et. seq) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefits, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

Instructions: Summarized below are the procedures to be followed in administering this test. The arterial blood-gas study shall initially be administered at rest and in a sitting position. If the results of the test at rest are not within the values indicated on the applicable table shown on the reverse side of this form, an exercise blood-gas study shall be offered to the miner unless medically contraindicated. *If an exercise blood-gas test is administered, blood shall be drawn during exercise. Complete instructions for administration of this test and table of values may be found in 20 CFR Part 718, Subpart B, 718.105, and appendix C.

| 1. Name of Miner (First, middle, last) | 2. SSN or DOL Claim No. | 3. Date of Test (mm/dd/yyyy) |
|---|---|---|
| Arvis         R      Toler | XXX-XX-5366 | 04/02/2008 |

**4. Miner's:**
70 Age
65 Height
115 Weight

**5. Altitude: (Check one)**
[X] 0 to 2999 feet above sea level
[ ] 3000 to 5999 feet above sea level
[ ] 6000 feet or more above sea level

**6. Barometric Pressure**
740
(Equipment Temperature)
24 °C

**7.**
Site of Puncture: RB X 2          Indwelling line: _____          Single stick: _____

**8a.**

| | Time Sample Drawn | Iced Yes / No | Time Sample Analyzed |
|---|---|---|---|
| Rest: | 02:00 pm | [ ] / [X] | 02:04 pm |
| Exercise:* | 02:16 pm | [ ] / [X] | 02:18 pm |

**b. Pulse rate at time sample drawn:**
Rest: 84          Exercise 107

**c. Was equipment calibrated before and after each test?**
[X] Yes          [ ] No

**d. Type of exercise and duration:***
patient walked approximately 70 feet- oxygen saturation decreased to 83% during walk.

Observed Values    MAY 05 2008
ESA/OWCP/CADMINISTERED
Exercise if Administered*
Mt STERLING, KY

**9.**

| Test Results | Predicted Normal Range | Resting | Exercise if Administered* |
|---|---|---|---|
| pCO2(mmHg) | 40 | 36.2 | 36.1 |
| PO 2 (mmHg) | 80 | 70.1 | 49.0 |
| pH | 740 | 7.457 | 7.449 |

*Is the exercise portion of this study medically contraindicated? If YES, for what reason?          [ ] Yes    [X] No

**10. Additional Comments:**

| 11 a. Facility where test performed: | 12. Print or type name of technician performing the study: |
|---|---|
| REACHS | Shan Ray, CRT |

| 11 b. Provider Number : | 13. Print or type the name of Physician: |
|---|---|
| 020582400 | Dr. John Burrell |

14. Physician's Signature: I certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am so aware that any person who willfully makes any false or misleading statements or representations in support of an application for benefits shall be guilty under Title 30 USC 941 of a misdemeanor and subject to a fine of up to $1,000.00, or to imprisonment for up to one year, or both.

Signature: _____          Date: 04/02/2008

Form CM-1159
Rev. Apr. 2003

J.A. 250



## REACHS COMMUNITY HEALTH CENTER
### 502 W. CENTRAL, STE. 1
### LAFOLLETTE, TN 37766
### ARTERIAL

DATE **4-2-08**

TIME **2:00 pm**

NAME **Toler, Arvis R**

SOCIAL SECURITY # **5366**

HR REST **84**    EXER **107**

PATIENTS TEMP. **98.6**

ALLENS TEST PERFORMED **N/A**

EQUIPMENT TEMP **24 C**

TECHNICIAN **S Ray crt**

PHYSICIAN **Dr. Burrell**

COMMENTS **walked pt.**
**approx. 70 feet.**
**O2 Sat ↓ 83%. during**
**walk**

---

IRMA TRUpoint
Blood Analysis System
Patient Test Results
S/N: 28747

Tested on
04/02/08  02:04 PM

Calibration Successful

Cal Code       LKT-IIE-UPH
Cartridge Lot        EXMFA
Test Number            898

User ID:            QA User
Patient ID:            5366

Patient Temperature
    37.0°C    98.6°F

BP            740   mmHg

Measured @    37.0    °C
    pH      H  7.457
    pCO2       36.2   mmHg
    pO2     L  70.1   mmHg

EACHS Ref. Ranges
    pH     7.350-7.450
    pCO2   35.0- 45.0  mmHg
    pO2    80.0-100.0  mmHg

Calculated Results
    HCO3-      25.3    mM
    TCO2       26.4    mM
  * BEb         1.7    mM
    BEecf       1.4    mM
    O2Sat      94.9    %

*tHb for BEb  15.0  g/dL

Sample Info:
    Site:   Right Brachial
    FIO2           21    %

Patient Notes:

_Toler, Arvis_
----------------
Patient Name

Software Version
IRMA TRUpoint 6.1.1

---

IRMA TRUpoint
Blood Analysis System
Patient Test Results
S/N: 28747

Tested on
04/02/08  02:18 PM

Calibration Successful

Cal Code       LKT-IIE-UPH
Cartridge Lot        EXMFA
Test Number            899

User ID:            QA User
Patient ID:            5366

Patient Temperature
    37.0°C    98.6°F

BP            740   mmHg

Measured @    37.0    °C
    pH         7.449
    pCO2       36.1   mmHg
    pO2     L  49.0   mmHg

REACHS Ref. Ranges
    pH     7.350-7.450
    pCO2   35.0- 45.0  mmHg
    pO2    80.0-100.0  mmHg

Calculated Results
    HCO3-      24.8    mM
    TCO2       25.9    mM
  * BEb         1.1    mM
    BEecf       0.8    mM
    O2Sat      86.4    %

*tHb for BEb  15.0  g/dL

Sample Info:
    Site:   Right Brachial
    FIO2           21    %

Patient Notes:

_Toler, Arvis_
----------------
Patient Name

Software Version
IRMA TRUpoint 6.1.1

J.A. 251



TOLER, ARVIS
ID:    5366

04/02/2008 14:10:06

Sinus rhythm
Poor R wave progression - probable normal variant

D.O.B.:
MALE
Meds:
Class:
Loc:    1

70 YEARS

Borderline ECG

* Unconfirmed Analysis *

RECEIVED
MAY 05 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

| | |
|---|---|
| Vent. Rate: | 70 bpm |
| RR Interval: | 848 ms |
| PR Interval: | 126 ms |
| QRS Duration: | 86 ms |
| QT Interval: | 402 ms |
| QTc Interval: | 419 ms |
| QT Dispersion: | 74 ms |
| P-R-T AXIS: 83° | 74°  76° |

C: BURDINE/VI/NC.

L:  10 mm/mV

BURDINE/BROGESS NO/REF 007988

REACHS COMMUNITY CLINIC

*STABLE  40 Hz*

25 mm/s

J.A. 252

## Report of Ventilatory Study

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation



**Note:** This report is authorized by law (30 USC, 901 at. seq.) and required to obtain a benefit. The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a Social Security Number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Circular No. 108.

OMB No. 1215-0090
Expires: 07-31-2008

**Instructions:** Any ventilatory study conducted after January 19, 2001 must include tracings of flow versus volume (flow-volume loop) as part of the reported test. If the spirometer used for this test cannot provide a flow-volume loop, indicate this fact in item 10. Submit three tracings of the flow-volume loop which displays the entire maximum inspiration and the entire maximum forced expiration, and three tracings of the volume versus time (spirogram) derived electronically from the flow-volume loop. Identify each tracing with the patients name and social security number/DOL Claim Number. Report the results of the FEV1, the FVC and the FEV1/FVC ratio (expressed as a percentage). If a bronchodilator is administered, report the values obtained both before and after bronchodilation and explain the significance of the results obtained in item 10. Measuring and reporting the MVV optional. If the MVV is measured, submit two tracings of the individual breath volumes versus time if the MVV values obtained are within 10% of each other; otherwise, submit three tracings. The MVV results must be obtained independently, rather than calculated from the FEV1. Complete instructions and standards for administration of these tests may be found in 20 CFR Part 718, Subpart B, 718.103, and Appendix B, and are summarized on Form CM-2954a.

| 1. Name of Miner (First, middle, last) | | 2. Social Security Number or DOL Claim Number: | 3. Date and Time of Test | | | | |
|---|---|---|---|---|---|---|---|
| Arvis R Toler | | XXX-XX-5366 | **04** 02 MM DD | **08** YY | 1 a.m. □ | : 29 p.m. ☒ | |

| 4. Age: | 5. Sex: | 8. Circle as appropriate (If "poor", explain in No. 10, "Additional Comments", the nature and extent of any impact this factor had on the results obtained) |
|---|---|---|
| 70 | M | |
| 6. Height(inches): | 7. Weight: | Miner's degree of Cooperation:   (Good) Fair   Poor |
| 65 | 115 | Miner's ability to understand instructions and follow directions:   (Good) Fair   Poor |

| 9. (a) Type of Test | (b) Observed Values BEFORE Bronchodilator (Corrected to BTPS) | Observed Values AFTER Bronchodilator, if Given (Corrected to BTPS) | (c) Predicted Normal Values |
|---|---|---|---|
| FEV1 (In liters/second) | | | |
| (Required) | .60 | | 2.41 |
| FVC (In liters) | | | |
| (Required) | 3.17 | | 3.06 |
| FEV1 /FVC Ratio | | | |
| (Required) | 19 | | MAR 0 3 2008 |
| MVV (In liters/minute) | | | ESA/OWCP/DCMWC |
| (Optional) | | | MT. STERLING, KY |

10. Additional Comments: (For example – note any dyspnea; use of bronchodilators; coughing during test; If the miner was unable to complete the test, explain reason for such failure.)

Used nebulizer-albuterol & atrovent @ 9am

| 11. (a) Type of machine used (Trade name) | (b) Rate of paper speed | (c) Temperature of Equipment |
|---|---|---|
| Puritan Bennett | .5 cm = 1 L/S | 24 C |

| 12. Facility where test performed | 13. Print or type Name and Title of Technician or Physician administering test |
|---|---|
| REACHS Community Health Center | Shan Ray, CRT |

I certify that these ventilatory studies were conducted and reported in compliance with specifications and instructions provided by the Department of Labor. I also certify that the information furnished is correct and I am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statement or representation in support of an application for benefits shall be guilty under Title 30 USC 941 of a misdemeanor and subject to a fine of up to $1,000., or to imprisonment for up to one year, or both.

| Dr. John Burrell | | 4/2/08 |
|---|---|---|
| Print or Type Name of Physician | Physician's Signature | Date |

### Public Burden Statement

We estimate that it will take an average of 20 minutes to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding the burden estimate or any other aspect to this collection of information, including suggestions for reducing this burden, send them to the Division of Coal Mine Workers' Compensation, U.S. Department of Labor, Room N-3464, 200 Constitution Avenue, N.W., Washington, D.C. 20210.  **DO NOT SEND THE COMPLETED FORM TO THIS OFFICE**

NOTE: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

Form CM-2907
Rev. Dec. 2001

Spirometry Report
Puritan-Bennett Renaissance II
S/N:    G040700312

Session Date:    02APR2008
Session Time:    01:29PM
Last Cal Check:    02APR2008

Version:    1.1.11

BEST 3 FVC/FVL REPORT

| | | |
|---|---|---|
| ID: | 5366 | |
| Name: | TOLER ARVIS | |
| Gender: | MALE | |
| Medication: | | |
| Dosage: | | |

| | | | |
|---|---|---|---|
| Height: | 65" | Physician: | J BURRELL |
| Age: | 70YRS | Technician: | S RAY |
| Weight: | 115LBS | | |
| Smoker: | 30YRS, 30Pack Yrs, Quit In 1996 | | |
| Ethnicity/Correction: | CAUCASIAN | | 20.2% |

| | |
|---|---|
| Sensor Code: | 638676 |
| Temperature: | 71F |
| Barometric Press: | 730mmHg |
| BTPS Correction: | 1.107 |
| Normals: | KNUDSON 83 |

Clinical Format:    PREMED - 01:32PM
                    Best Criteria:

* Indicates Best Value
VAL

< Indicates Below LLN

| MEASUREMENT | Trial 5 | %Pred | Trial 6 | Trial 7 | Pred | LLN |
|---|---|---|---|---|---|---|
| FVC (L) | 3.17* | 103 | 3.10 | 2.94 | 3.06 | 2.24 |
| FEV1 (L) | 0.60 < | 24 | 0.64 < | 0.65* < | 2.41 | 1.86 |
| FEV1% | 19 < | 24 | 21 < | 22 < | 80 | 70 |
| FEF25-75 (L/S) | 0.24* | 9 | 0.25 | 0.25 | 2.49 | |
| PEF(L/S) | 1.97* | 27 | 1.84 | 1.99 | 7.07 | |
| FET (S) | 14.61* | | 13.07 | 12.61 | | |
| FIVC (L) | 2.81* | 91 | 2.81 | 2.76 | 3.06 | |
| PIF(L/S) | 2.96* | | 3.12 | 2.61 | | |
| FEF50/FIF50 | 0.10* | | 0.10 | 0.09 | | |

BEST FEV1%    21* <

Report Summary:
Pre Med:    Tests 7    FVC VAR:    64ML    FEV1 VAR:    10ML    PEF VAR:    137ML/S

ATS Interpretation:              PREMED - Very Severe Obstruction
Comment:    good effort + cooperation
                                SRayent



RECEIVED
MAY 05 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

J.A. 254



Puritan-Bennett Renaissance II
S/N:      G040700312

Session Date:    02APR2008
Session Time:    01:29PM
Last Cal Check:   02APR2008





RECEIVED
MAY 05 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

J.A. 255

Spirometry Report
Puritan-Bennett Renaissance II
S/N:       G040700312

REACHS COMMUNITY HEA

Session Date:    02APR2008
Session Time:    01:29PM
Last Cal Check:  02APR2008



J.A. 256

Spirometry Report
Puritan-Bennett Renaissance II
S/N:        G040700312
Version:    1.1.11

Session Date:    02APR2008
Session Time:    01:29PM
Last Cal Check:  02APR2008

BEST 3 FVC/FVL REPORT

ID:          5366
Name:        TOLER ARVIS
Gender:      MALE
Medication:
Dosage:

Height:     65"
Age:        70YRS        Physician:   J BURRELL
Weight:     115LBS       Technician:  S RAY
Smoker:     30YRS, 30Pack Yrs, Quit In 1996
Ethnicity/Correction:  CAUCASIAN         20.2%

Sensor Code:          638676
Temperature:             71F
Barometric Press:    730mmHg
BTPS Correction:       1.107
Normals:           KNUDSON 83

Clinical Format:     PREMED - 01:32PM
                     Best Criteria:

* Indicates Best Value
VAL

< Indicates Below LLN

| MEASUREMENT | Trial 5 | %Pred | Trial 4 | Trial 3 | Pred | LLN |
|---|---|---|---|---|---|---|
| FVC (L) | 3.17* | 103 | 2.88 | 2.55 | 3.06 | 2.24 |
| FEV1 (L) | 0.60 < | 24 | 0.61 < | 0.69* < | 2.41 | 1.86 |
| FEV1% | 19 < | 24 | 21 < | 27 < | 80 | 70 |
| FEF25-75 (L/S) | 0.24* | 9 | 0.27 | 0.32 | 2.49 | |
| PEF(L/S) | 1.97* | 27 | 1.89 | 2.17 | 7.07 | |
| FET (S) | 14.61* | | 11.67 | 8.71 | | |
| FIVC (L) | 2.81* | 91 | 2.61 | 1.85 | 3.06 | |
| PIF(L/S) | 2.96* | | 3.26 | 2.86 | | |
| FEF50/FIF50 | 0.10* | | 0.10 | 0.12 | | |

BEST FEV1%        22* <

Report Summary:
Pre Med:    Tests 5  FVC VAR:    289ML  FEV1 VAR:    77ML  PEF VAR:    86ML/S

ATS Interpretation:          PREMED - Very Severe Obstruction
Comment:



RECEIVE
MAY 0 5 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

J.A. 257

Puritan-Bennett Renaissance II
S/N:    G040700312

Session Date:    02APR2008
Session Time:    01:29PM
Last Cal Check:  02APR2008



PREMED

FLOW (L/S)

LEGEND:
— Pre  5
— Pre  4
— Pre  3
···· Pred

.5 CM=1L/S    1 CM=1L                    VOLUME (L)



RECEIVED
MAY 0 5 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

J.A. 258

Puritan-Bennett Renaissance II
S/N:      G040700312

Session Date:    02APR2008
Session Time:     01:29PM
Last Cal Check:  02APR2008



RECEIVED
MAY 0 5 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

Page 3 of 3

J.A. 259

**Thomas E. Miller, M.D.**
**BlueRad PLLC**
**108 Titleist Drive**
**Bluefield, VA 24605**
**(276) 322-5911**

RECEIVED
SEP 02 2008
ESA/OWCP/DCMWC
MT. STERLING, KY

August 24, 2008

Attn: Sadie Tipton
REACHS Black Lung Clinic
P.O. Box 209
Jacksboro, TN 37757

RE:    Arvis Toler
       SS#: ██████████
       Chest X-RAY DATED: 07-14-2008
       DOB: ██████████
       Coal Mining: 27 years

This film is of good technical quality (#1).

There are diffuse small opacities in the left lung that are compatible with pneumoconiosis. These small opacities (t/s) are predominantly irregular, with a size less than three millimeters, and there are secondary small opacities that are also irregular and less than 1.5 millimeters in size. ILO profusion is estimated at 1/1.

Bullous change predominates in the right lung (bu). Hyperexpansion is consistent with COPD (em).

The heart is normal in size, and the mediastinum appears unremarkable. No masses or lymph node enlargement is seen.

SUMMARY:

Small opacities compatible with pneumoconiosis

|  |  |
|---|---|
| Category | t/s |
| Profusion | 1/1 |

*T. Miller, M.D.*

Thomas E. Miller, M.D.
Certified B-reader
Board Certified in Radiology

DIRECTOR EXHIBIT
NO ____15____ CONSISTING
OF ____15____ PAGES

J.A. 260

1544192534

**ARTMENT OF HEALTH AND HUMAN SERVI**
**PUBLIC HEALTH SERVICE**

CENTERS FOR DISEASE CONTROL & PREVENTION
National Institute for Occupational Safety and Health
Federal Mine Safety and Health Act of 1977
Medical Examination Program

**ROENTGENOGRAPHIC INTERPRETATION**

OMB No. 0920-0020

RECEIVED
SEP 02 2008

Coal Workers' Health Surveillance Program
NIOSH
PO Box 4258
Morgantown, West Virginia 26508

SAOWP/DCMWC
MT STERLING, KY

**DATE OF RADIOGRAPH**

| MONTH | DAY | YEAR |
|---|---|---|
| 0 7 | 1 4 | 2 0 0 8 |

**WORKER'S SOCIAL SECURITY NUMBER**

Note: Please record your interpretation of a single film by placing an "x" in the appropriate boxes on this form.

**TYPE OF READING**

A [ ]   B [X]   P [ ]

**FACILITY IDENTIFICATION**

---

**1. FILM QUALITY**

[X] 1  [ ] 2  [ ] 3  [ ] U/R
(If not Grade 1, mark all boxes that apply)

[ ] Overexposed (dark)
[ ] Underexposed (light)
[ ] Artifacts

[ ] Improper position
[ ] Poor contrast
[ ] Poor processing

[ ] Underinflation
[ ] Mottle
[ ] Other (please specify)

---

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**

YES [X]  Complete Sections 2B and 2C
NO [ ]  Proceed to Section 3A

---

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

| PRIMARY | SECONDARY |
|---|---|
| p   s | p   s [X] |
| q [X] t | q   t |
| r   u | r   u |

b. ZONES

| | R | L |
|---|---|---|
| UPPER | [X] | [X] |
| MIDDLE | [X] | [X] |
| LOWER | | |

c. PROFUSION

| | | |
|---|---|---|
| 0/- | 0/0 | 0/1 |
| 1/0 [X] | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. LARGE OPACITIES**

SIZE [X] A [ ] B [ ] C [ ]
Proceed to Section 3A

---

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**

YES [ ]  Complete Sections 3B, 3C
NO [X]  Proceed to Section 4A

---

**3B. PLEURAL PLAQUES** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) | Width (in profile only) (3mm minimum width required) |
|---|---|---|---|---|
| | | | Up to 1/4 of lateral chest wall = 1 | 3 to 5 mm = a |
| | | | 1/4 to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
| | | | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
| In profile | O R L | O R L | | |
| Face on | O R L | O R L | | |
| Diaphragm | O R L | O R L | O R   O L | O R   O L |
| Other site(s) | O R L | O R L | 1 2 3   1 2 3 | a b c   a b c |

---

**3C. COSTOPHRENIC ANGLE OBLITERATION**

R [ ] L [ ]  Proceed to Section 3D
NO [ ]  Proceed to Section 4A

---

**3D. DIFFUSE PLEURAL THICKENING** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) | Width (in profile only) (3mm minimum width required) |
|---|---|---|---|---|
| | | | Up to 1/4 of lateral chest wall = 1 | 3 to 5 mm = a |
| | | | 1/4 to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
| | | | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
| In profile | O R L | O R L | O R   O L | O R   O L |
| Face on | O R L | O R L | 1 2 3   1 2 3 | a b c   a b c |

---

**4A. ANY OTHER ABNORMALITIES?**

YES [X]  Complete Sections 4B, 4C, 4D, 4E
NO [ ]  Proceed to Section 5

---

**4B. OTHER SYMBOLS (OBLIGATORY)**

aa [ ] at [ ] ax [X] bu [ ] ca [ ] cg [ ] cn [ ] co [ ] cp [ ] cv [ ] di [ ] ef [ ] em [X] es [ ] fr [ ] hi [ ] ho [ ] id [ ] ih [ ] kl [ ] me [ ] pa [ ] pb [ ] pi [ ] px [ ] ra [ ] rp [ ] tb [ ]

[ ] OD  If other diseases or significant abnormalities, findings must be recorded on reverse. (section 4C/4D)

Date Physician or Worker notified?

| MONTH | DAY | YEAR |
|---|---|---|
| | | |

**4E.** Should worker see personal physician because of findings in section 4? YES [ ] NO [X]
Proceed to Section 5

---

**5. PHYSICIAN'S SOCIAL SECURITY NUMBER***

* Furnishing your social security number is voluntary. Your refusal to provide this number will not affect your right to participate in this program.

**FILM READER'S INITIALS**
T E M

**DATE OF READING**

| MONTH | DAY | YEAR |
|---|---|---|
| 0 8 | 2 4 | 2 0 0 8 |

M i l l e r   1 0 8   T i t l e i s t   D r i v e
LAST NAME - STREET ADDRESS

B l u e f i e l d
CITY

V A
STATE

2 4 6 0 5
ZIP CODE

J.A. 261

Roentgenographic Interpretation



**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs
Division of Coal Mine Workers' Compensation

NOTE: This report is authorized by law. (30 U.S.C., 901 et. seq.) The results of this interpretation will aid in determining the miner's eligibility for black lung benefits. Disclosure of a social security number is voluntary. The failure to disclose such number will not result in the denial of any right, benefit, or privilege to which the claimant may be entitled. This method of collecting information complies with the Freedom of Information Act, the Privacy Act of 1974, and OMB Cir. No. 108.

OMB No. 1215-0090  Expires: 02-28-96

Please record your interpretation of a single film by placing "X" in the appropriate boxes on the form and return it promptly to the office that requested the interpretation. The form must be completed as per instructions, signed by a physician, and contain the miner's name, and social security number. The Department of Labor will pay only for films of acceptable quality (1, 2 and 3). Films of inferior quality (U/R) must be retaken without cost to the Department.

**1. Miner's Name (Print)** ARVIS TOLER

**1A. Date of X-ray** 07 / 14 / 08  MO. DAY YR.

**1B. Miner's Social Security Number** ████ ██ ████

**1C. Film Quality (If not Grade 1, Give Reason):** X [ ]2 [ ]3 [ ]U/R

**1D. Is Film Completely Negative?**  YES [ ] Proceed to Section 5   NO [X] Complete Section 2A

**2A. Any Parenchymal Abnormalities Consistent with Pneumoconiosis?**  YES [X] Complete 2B and 2C   NO [ ] Proceed to Section 3

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

| PRIMARY | | SECONDARY | |
|---|---|---|---|
| p [X] | | p [ ] s | |
| q [ ] | t | q [ ] | t |
| r [ ] | u | r [ ] | u |

b. ZONES [X]  R  L

c. PROFUSION

| 0/- | 0/0 | 0/1 |
|---|---|---|
| 1/0 | | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. LARGE OPACITIES**  SIZE [X] A B C  Proceed to Section 3

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**  YES [ ] Complete 3B, 3C and 3D   NO [X] Proceed to Section 4

**3B. PLEURAL THICKENING**

a. Diaphragm (plaque)  SITE [ ]O R L

b. Costophrenic Angle  SITE [ ]O R L

**3C. PLEURAL THICKENING ...Chest Wall**

a. CIRCUMSCRIBED (plaque)

| | O | R | | | | O | L |
|---|---|---|---|---|---|---|---|
| In Profile | | | | | In Profile | | |
| i. Width | O A B C | | | | | O A B C | |
| ii. Extent | 0 1 2 3 | | | | | 0 1 2 3 | |
| Face On iii. Extent | 0 1 2 3 | | | | | 0 1 2 3 | |

b. Diffuse

| | O | R | | | | O | L |
|---|---|---|---|---|---|---|---|
| SITE | | | | | SITE | | |
| In Profile i. Width | O A B C | | | | | O A B C | |
| ii. Extent | 0 1 2 3 | | | | | 0 1 2 3 | |
| Face On iii. Extent | 0 1 2 3 | | | | | 0 1 2 3 | |

**3D. PLEURAL CALCIFICATION**

| SITE | O R | EXTENT | | SITE | O L | EXTENT |
|---|---|---|---|---|---|---|
| a. Diaphragm | | 0 1 2 3 | a. Diaphragm | | 0 1 2 3 |
| b. Wall | | 0 1 2 3 | b. Wall | | 0 1 2 3 |
| c. Other Sites | | 0 1 2 3 | c. Other Sites | | 0 1 2 3 | Proceed to Section 4 |

**4A. ANY OTHER ABNORMALITIES?**  YES [X] Complete 4B and 4C   NO [ ] Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

O  ax  bu(ⓐ)  ca  cn  co  cp  cv  di  ef  (em)  es  fr  hi  ho  id  ih  kl  pi  px  rp  tb

REPORT ITEMS WHICH MAY BE OF PRESENT CLINICAL SIGNIFICANCE IN THIS SECTION.  [od] (Specify od.)  Date Personal Physician notified?  [ ]Mo. [ ]Day [ ]Yr.

**4C. OTHER COMMENTS** Hyperinflation; bullae in upper lung zones; mild aortic HSVD; highest profusion of 1/1 in left lower zone. → 30 x 20 mm density adjacent to lower right heart border - Needs follow-up

SHOULD WORKER SEE PERSONAL PHYSICIAN BECAUSE OF COMMENTS IN SECTION 4C? (Yes) No   Proceed to Section 5

**5A. FACILITY PROVIDING ROENTGENOGRAPHIC EXAMINATION:** REACH's Community Health Center

DOL Medical Provider Number (If applicable): _____

Was film taken by a registered radiographer/radiographic technologist? [ ] Yes  [ ] No   State _____

Name _____   Registration No. _____

**5B. Physician Interpreting Film (Print Name):** MICHAEL S. ALEXANDER, MD

Are you: Board-certified Radiologist? [X] Yes  [ ] No.   Board-eligible radiologist? [ ] Yes  [ ] No.   B-reader? [X] Yes  [ ] No.

5C. I certify that this film has been interpreted in accordance with the instructions provided on Form CM-954a and/or 20 CFR 718, Subpart B, 718.102 and Appendix A. I also certify that the information furnished is correct and am aware that my signature attests to the accuracy of the results reported. I am aware that any person who willfully makes any false or misleading statements or representation in support of an application for benefits under Title 30 USC 941 shall be guilty of a misdemeanor and subject to a fine of up to $1,000, or to imprisonment for up to one year, or both.

PHYSICIAN'S SIGNATURE  Michael S Alexander MD   DATE OF READING: 07-17-08 (Mo., Day, Yr.)

### CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2015, copies of the foregoing Motion for Leave to File Supplemental Joint Appendix were served on the following parties electronically through the CM/ECF notification system:

Mr. Sean Gregory Bajkowski:
blls-sol@dol.gov, bajkowski.sean@dol.gov

Mr. Jeffrey Steven Goldberg:
BLLS-SOL@dol.gov, goldberg.jeffrey@dol.gov

Evan Barret Smith:
evan@appalachianlawcenter.org

s/Laura Metcoff Klaus
Laura Metcoff Klaus